O.D. SMITH, Jr., in his Individual Capacity and his Official Capacity as Deputy Sheriff of Ellis County, Texas, Appellant,

v.

Robert Earl DAVIS, Appellee.

No. 05–98–01641–CV.

Court of Appeals of Texas, Dallas.

Aug. 18, 1999.

John D. Exline, Attorney at Law, Dallas, for Appellant.

Peter Lesser, Attorney at Law, Dallas, for Appellee.

Before Justices MORRIS, WHITTINGTON, and ROACH.

## OPINION

JOSEPH B. MORRIS, Justice.

In this case, we decide whether a county employee, sued independently from his employer, may assert official and sovereign immunity as defenses against a tort claim. Robert Earl Davis sued two Ellis County deputy sheriffs in their individual and official capacities based on events surrounding his arrest for telephone harassment and the eventual dismissal of the charges against him. One of the deputy sheriffs, O.D. Smith, Jr., brings this interlocutory appeal challenging the trial court's refusal to grant him summary judgment on Davis's claim against him for malicious prosecution. Smith contends the trial court erred in not concluding as a matter of law that he was immune from liability in both his individual and official capacities. On the undisputed facts presented, we agree the trial court erred in not granting summary judgment to Smith in his individual capacity under the doctrine of official immunity. But we also conclude Smith was not entitled to summary judgment in his official capacity under the doctrine of sovereign immunity because that affirmative defense was reserved in this case only to Ellis County, which was never made a party in Davis's suit. The trial court, therefore, did not err in denying Smith summary judgment in his official capacity.

### I.

In October 1993, Sue Sherrard called the Ellis County Sheriff's Office to complain about a bill collector named Larry Johnson. Sherrard stated that Johnson worked with a collection agency called Hamilton–Phelps & Associates and he had been harassing her in an attempt to collect a debt owed by her son. Smith and another officer, Clint Tims, were assigned to investigate the complaint.

Smith telephoned Johnson at his office and asked him to tell his side of the story. According to Smith, Johnson responded angrily, cursed at him, and hung up. Smith then asked Tims to call Johnson. Johnson gave Tims an equally angry response. After Johnson hung up on Tims, Tims immediately telephoned again and asked the receptionist to put him through to the office supervisor. Tims was transferred to a man named Chaston Howell. Tims stated that Howell's voice sounded identical to Johnson's. After Tims identified himself and the purpose of his call, Howell made some rude remarks and hung up. Tims then called the office a third time and asked to speak to Howell again. The man Tims spoke to this time made some specific, disparaging remarks and hung up. Gregory Hamilton, a principal of Hamilton–Phelps & Associates, later admitted he was the person who made the disparaging comments to Tims.

Smith made an appointment to see Sherrard that afternoon. During his visit with her, Smith took a written statement in which Sherrard stated that Johnson had been calling her six or seven times a day in connection with her son's debt. Sherrard stated that Johnson used foul language and was abusive and threatening. Sherrard repeatedly told Johnson to stop calling her, but he continued to do so.

Three days after obtaining the statement from Sherrard, Smith prepared and signed a complaint against Johnson as well as an affidavit to obtain an arrest warrant for Johnson. Smith presented the affidavit to a magistrate. In his summary judgment affidavit, Smith stated that, in addition to the information contained in the affidavit in support of the arrest warrant, he told the magistrate that the name "Larry Johnson" possibly was an alias. Both Smith and Tims testified they had interviewed a collection agent from another company who told them that bill collectors often use assumed names. The arrest warrant, however, was issued only for the arrest of "Larry Johnson."

After obtaining the signed warrant, both Smith and Tims went to the collection agency. Upon entering the office, Smith

saw a box with the name Larry Johnson on it. Smith told the receptionist he wanted to see Johnson. Although the facts concerning what occurred after this point are in dispute, Davis, who was also employed by the agency, walked into the office at that time. Smith and Tims placed Davis under arrest believing he was the man they had spoken to on the phone and who had been harassing Sherrard. Both officers testified they recognized Davis's voice as the same one they heard over the phone when talking to "Larry Johnson." Davis contends he repeatedly informed the officers that he was not Larry Johnson and that he provided them with proof of his identity after his arrest. Hamilton testified that a man named Larry Johnson was, in fact, employed by his agency and working on the Sherrard account. The harassment charge brought against Davis was later dismissed because Sherrard was unable to identify Davis as the man who had been harassing her.

After the harassment charge was dismissed, Davis brought this civil action against Smith and Tims in both their individual and official capacities as deputy sheriffs of Ellis County. Davis did not sue Ellis County itself. Davis alleged claims for false arrest, false imprisonment, and assault and battery against both Smith and Tims. In addition, Davis asserted a claim for malicious prosecution against Smith alone.

Smith and Tims moved for summary judgment on all of Davis's claims arguing several grounds, including official and sovereign immunity. The trial court granted summary judgment in their favor on all claims except the claim against Smith for malicious prosecution. Smith now brings this interlocutory appeal pursuant to section 51.014(5) of the Texas Civil Practice and Remedies Code contending the trial court erred in failing to hold that he was immune from liability on the malicious prosecution claim in both his individual and official capacities.

II.

In examining Smith's contentions on appeal, we recognize that the malicious prosecution claim against him in his individual capacity is separate and distinct from the claim against him in his official capacity. A suit against a government employee in his individual capacity seeks to impose personal liability on the employee for actions he takes under color of state law. *See Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). By comparison, a suit against an employee in his official capacity seeks to impose liability on the governmental entity that employs him. *Id.* at 166, 105 S.Ct. 3099.

Each capacity involves a separate and distinct form of potential immunity. Government employees sued in their individual capacity may claim the protections of official immunity. *Gross v. Innes*, 930 S.W.2d 237, 239 (Tex.App.-Dallas 1996, writ dism'd w.o.j.). An individual sued in his official capacity, on the other hand, may in some cases enjoy the protections of sovereign immunity to the extent those protections are available to his employer. *See City of Hempstead v. Kmiec*, 902 S.W.2d 118, 122 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Thomas v. Crow*, 862 S.W.2d 719, 721 (Tex.App.-Tyler 1993, no writ). In this case, Smith claimed he was entitled to the protections provided by both forms of immunity. We examine first whether Smith demonstrated that he was entitled to official immunity in his individual capacity.

To be entitled to official immunity, Smith was required to show that the claim for malicious prosecution arose out of his performance of discretionary duties that were done in good faith and within the scope of his authority. *See Kmiec*, 902 S.W.2d at 120. A defendant's conduct that forms the basis for a claim of malicious prosecution is his initiation or procurement of a criminal prosecution against the plaintiff. *See Richey v. Brookshire Grocery*

*Co.*, 952 S.W.2d 515, 517 (Tex.1997); *see also Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 291 (Tex.1994). Accordingly, Smith was required to prove in his motion for summary judgment that his alleged "initiation or procurement of a criminal prosecution" against Davis was a discretionary duty performed in good faith within the scope of his authority.

▆▆▆ A person "initiates" a criminal prosecution when he makes a formal charge. *Lieck*, 881 S.W.2d at 292. A person "procures" a criminal prosecution if his actions are enough to cause the prosecution and, but for his actions, the prosecution would not have occurred. *Id.* Procurement requires that the person's actions be both necessary and sufficient to cause the criminal prosecution. *Id.* Davis alleged in his petition that Smith committed the tort of malicious prosecution by "filing the necessary paperwork to effectuate a prosecution."[1] In this case, Smith "effectuated" the prosecution against Davis, if at all, when he filed the formal complaint charging "Larry Johnson" with harassment. Reading Davis's petition broadly, we will also include Smith's affidavit made to obtain the arrest warrant among the alleged "necessary paperwork" filed by Smith.[2] There does not appear to be any dispute that Smith was discharging the duties generally assigned to him when he filed the complaint and made the affidavit and, therefore, was acting within the scope of his authority as a police officer. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 658 (Tex.1994). Consequently, at issue is only whether Smith's actions in filing the complaint and making the affidavit were discretionary and done in good faith.

▆▆▆ An act is discretionary if it involves personal deliberation, decision making, and judgment. *Kmiec*, 902 S.W.2d at 121. Smith submitted summary judgment evidence showing that he and Tims determined the course of the investigation into the allegations made by Sherrard. Through his investigation, Smith formed the belief that a man calling himself Larry Johnson was harassing Sherrard by telephone in connection with a debt she did not owe. Smith acted on his belief by personally filling out a complaint form and making an affidavit in support of an arrest warrant. The evidence shows that Smith used his independent judgment in deciding to file the charges and seek an arrest. Texas courts have consistently held that a law enforcement officer's decision to file a criminal complaint and his procurement of an arrest warrant are discretionary acts. *See, e.g., id.; Zess v. Funke*, 956 S.W.2d 92, 94 (Tex.App.-San Antonio 1997, no writ); *Boozier v. Hambrick*, 846 S.W.2d 593, 597 (Tex.App.-Houston [1st Dist.] 1993, no writ). Smith's actions were, therefore, discretionary.

▆▆▆ To establish that his initiation of the criminal prosecution was done in good faith as a matter of law, Smith was required to show that a reasonably prudent officer, under the same or similar circumstances, could have believed his actions were justified. *City of Dallas v. Aguirre*, 977 S.W.2d 862, 863 (Tex.App.-Dallas 1998, no pet.). Although good faith is measured against an objective standard of reasonableness, it was not necessary for Smith to prove that all reasonably prudent officers would have made the same decision. *City of Coppell v. Waltman*, 997 S.W.2d 633, 637–38 (Tex.App.-Dallas 1998, no pet.). An officer can act negligently and still be held to have acted in good faith. *Id.* Smith

---

1. Davis also alleged that Smith committed the tort of malicious prosecution by falsely arresting him. Assuming that a claim for false arrest could form the basis of a claim for malicious prosecution, Smith received summary judgment in his favor on the claim against him for false arrest. Accordingly, this claim will not be discussed further in this interlocutory appeal.

2. We express no opinion on the merits of a claim for malicious prosecution based solely on the act of filing an affidavit for an arrest warrant.

merely had to show that a reasonable official, possessing the same information he had at the time, could have believed his conduct was lawful. *See Chambers,* 883 S.W.2d at 656.

Good faith may be established by the testimony of the defendant officer if the testimony is clear, positive, direct, otherwise credible, free from contradiction, and readily controvertible. *Waltman,* at 637–38. Conclusory statements about acting in good faith are insufficient. The officer must provide adequate substantiation that a reasonably prudent officer in his position could have believed the actions taken were justified. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 (Tex.1997). Here, the summary judgment evidence contains affidavits by both Smith and Tims. Smith testified that, at the time he filed the complaint and obtained the arrest warrant, he believed that a man named Larry Johnson was harassing a woman named Sue Sherrard by telephone. Both Smith and Tims testified that a reasonable officer possessing the same information would have believed the actions they took to be lawful. The affidavits go on to substantiate these conclusions by setting forth the specific facts on which their conclusions are based. The specific facts known to Smith at the time he filed the complaint and obtained the arrest warrant for Larry Johnson were that Sherrard had made a specific allegation of phone harassment against a man named Larry Johnson and a man answering to the name of Larry Johnson had responded to the officers' investigation by using vulgar language over the telephone and hanging up on them. These facts are undisputed. We conclude that this summary judgment evidence was sufficient to show good faith in Smith's filing a complaint and seeking an arrest warrant for a man calling himself "Larry Johnson." The burden shifted to Davis to raise a fact issue on the element of good faith.

To controvert summary judgment proof of good faith, a plaintiff must show that no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts. *Chambers,* 883 S.W.2d at 657. A statement that a reasonable officer could or could not have taken some action will not raise a fact issue to defeat summary judgment. *Wadewitz,* 951 S.W.2d at 466. Instead, the testimony on good faith must address what a reasonable officer *could have believed* under the circumstances and, like the defendant's proof, must provide adequate substantiation for the conclusions expressed. *Id.* at 466–67.

In response to the motions for summary judgment, Davis filed several affidavits including one by his expert on police work. It is in this affidavit that the issue of Smith's good faith is addressed by Davis. Although the affidavit contains no statements concerning Smith's filing of the complaint, the expert addressed the arrest warrant by testifying that "no reasonable officer who believed that Larry Johnson might be an alias would have neglected to inform the magistrate of that fact at the time he was seeking an arrest warrant and no reasonable officer who suspected that Larry Johnson was an alias would have had that warrant issued without it reading John Doe aka Larry Johnson." This testimony does not raise a fact issue about Smith's good faith in initiating criminal proceedings against a man he believed was using the name Larry Johnson. If anything, the expert's testimony is evidence only of negligence in the manner in which the arrest warrant was filled out. Evidence of negligence alone does not controvert competent evidence of good faith. *Id.* at 469 n. 1.

Smith presented sufficient summary judgment evidence to demonstrate his entitlement to official immunity as a matter of law. Davis failed to raise a fact issue with respect to this affirmative defense. Therefore, Smith was entitled to the protections of official immunity. We conclude the trial court erred in failing to grant summary judgment to Smith in his individ-

ual capacity. We next address whether Smith was entitled to summary judgment in his official capacity.

As we said above, a suit against a government employee in his official capacity is distinctly different from a suit against him in his individual capacity. In suing an employee in his official capacity, a plaintiff seeks, in effect, to impose liability on the governmental unit the employee represents, rather than on the employee himself. *See Harris County v. Walsweer*, 930 S.W.2d 659, 665 (Tex.App.-Houston [1 st Dist.] 1996, writ denied). The plaintiff must look to the governmental unit to recover on any judgment rendered against the employee in his official capacity. *Graham*, 473 U.S. at 166, 105 S.Ct. 3099; *Walsweer*, 930 S.W.2d at 665. It is for this reason that courts have said that official capacity suits represent simply another way of pleading an action against the government so long as the government has notice and an opportunity to respond. *See Graham*, 473 U.S. at 166, 105 S.Ct. 3099. Notice to the governmental unit and an opportunity for it to respond are critical to equating a tort suit against an employee in his official capacity with a suit against the governmental unit because, absent such notice and opportunity, the government cannot be held liable on the judgment. *See* Tex. Civ. Prac. & Rem.Code Ann. §§ 101.101–102 (Vernon 1997).

When the governmental unit is a party to the suit, the employee may enjoy derivatively the protections and immunities of his employer. *See Kmiec*, 902 S.W.2d at 122. In response to the plaintiff's claims, the government may invoke sovereign immunity. If the plaintiff cannot prevail against the governmental unit because of its sovereign immunity, then the claims against the employee in his official capacity must necessarily fail also. *See id.* In Texas, however, the government does not become a party to a suit in tort, and tort liability cannot be imposed on it, unless it is first named as a defendant to the suit. *See* Tex. Civ. Prac. &

Rem.Code Ann. § 101.102(b) (Vernon 1997) (the pleadings of the suit must name as defendant the governmental unit against which liability is to be established). It is clear that Ellis County was not named as a party to this suit. We must decide, therefore, whether Smith may obtain summary judgment on the basis of sovereign immunity when Ellis County, his employer, was not named as a defendant. For the following reasons, we conclude he cannot.

Sovereign immunity is the doctrine under which the government is not answerable to suit or to damages unless it consents to be sued. *Gonzalez v. Heard, Goggan, Blair & Williams*, 923 S.W.2d 764, 765 (Tex.App.-Corpus Christi 1996, writ denied) (op. on reh'g). This immunity is incident to the power and the right to govern and may only be invoked by a governmental unit of the State. *See id.; Rhodes v. Torres*, 901 S.W.2d 794, 801 (Tex.App.-Houston [14 th Dist.] 1995, no writ). Sovereign immunity does not protect individuals; it protects the sovereign. *See Gross*, 930 S.W.2d at 239.

When sued, a governmental unit that wants to claim sovereign immunity should plead the immunity as an affirmative defense. *See* Tex.R. Civ. P. 94. Like other affirmative defenses, sovereign immunity may be waived if not pled. Because the immunity protects only the sovereign, only the sovereign is entitled to claim the defense or, possibly, decide to waive it by not affirmatively pleading it. Only after the sovereign pleads and proves the defense can the employee assert that the suit against him in his official capacity fails. *See Kmiec*, 902 S.W.2d at 122.

If individual employees were allowed to invoke the protections of sovereign immunity in tort cases where they were sued independently of the governmental unit that employed them and without the government's joinder in the suit, the employees would be directly litigating an immunity which protections they are only derivatively entitled to claim. An em-

ployee independently urging the defense of sovereign immunity would be virtually attempting to represent the interests of his non-party, governmental employer. Because the employee is not personally liable for a judgment rendered against him in his official capacity, the employee may have very little incentive to defend against those claims or to represent his employer's interests vigorously.

Furthermore, any adjudication of the defense of sovereign immunity without the sovereign having the opportunity to be present and defend itself would be an advisory opinion on the governmental unit's immunity or lack of it. It is well established that the courts of this state are not empowered to give advisory opinions. *Patterson v. Planned Parenthood, Inc.*, 971 S.W.2d 439, 443 (Tex.1998). Here, by urging the defense of sovereign immunity without Ellis County being given an opportunity to raise the defense itself, Smith claimed a justiciable interest in a defense available only to the sovereign. As such, he requested an impermissible advisory opinion from the trial court and is now requesting one from this Court. In effect, Smith, by asserting sovereign immunity, urged a defense on which the trial court could not grant relief because the party entitled to raise the defense, Ellis County, was not before the court. *See Copeland v. Boone*, 866 S.W.2d 55, 58 (Tex.App.-San Antonio 1993, writ dism'd w.o.j.) (there is no immunity other than official immunity that applies to governmental employees).[3] Because Smith could not independently, but only derivatively, urge the protections of sovereign immunity, the trial court did not err in refusing to grant Smith summary judgment in his official capacity.

In addition to Smith's appeal, Davis brought a cross-appeal contesting the trial court's granting of summary judgment on the other claims brought against both Smith and Tims. Because this appeal is interlocutory, we have no jurisdiction to address Davis's issues now. *See Richardson v. Parker*, 903 S.W.2d 801, 803 (Tex. App.-Dallas 1995, no writ). We dismiss the cross-appeal for want of jurisdiction.

We reverse the trial court's denial of summary judgment on the issue of official immunity and render judgment that Davis take nothing by his claim for malicious prosecution against Smith in his individual capacity. We affirm the trial court's denial of summary judgment on the claim for malicious prosecution against Smith in his official capacity because Smith's claim of sovereign immunity was a request for relief the trial court could not grant him and, also, was a request for an advisory opinion on Ellis County's sovereign immunity. We remand the claim to the trial court for further proceedings.

---

**3.** *But see Liberty Mut. Ins. Co. v. Sharp*, 874 S.W.2d 736, 738 (Tex.App.-Austin 1994, writ denied); *Gonzalez v. Avalos*, 866 S.W.2d 346, 352 (Tex.App.-El Paso 1993, writ dism'd w.o.j.) (sovereign immunity applied to employees sued independently of their government employer).