COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.
2-06-378-CV

 

BILL SOUDER, IMMEDIATE PAST MAYOR                              APPELLANTS

OF
THE CITY OF HURST, TEXAS, RICHARD

WARD,
MAYOR OF THE CITY OF HURST, TEXAS,

CHARLES
SWEARENGEN, MAYOR PRO TEM 

OF
THE CITY OF HURST, TEXAS, LARRY 

KITCHENS,
CITY COUNCIL MEMBER OF THE CITY

OF
HURST, TEXAS, HENRY WILSON, CITY COUNCIL 

MEMBER
OF THE CITY OF HURST, TEXAS, BILL 

MCLENDON,
CITY COUNCIL MEMBER OF THE CITY

OF
HURST, TEXAS, ANNA HOLZER, CITY COUNCIL 

MEMBER
OF THE CITY OF HURST, TEXAS, ALLAN

WEEGAR,
CITY MANAGER OF THE CITY OF HURST, 

TEXAS,  ALLAN HEINDEL, DEPUTY CITY MANAGER OF

THE
CITY OF HURST, TEXAS, AND ERIC JOHNSON, 

PROJECT
AND FACILITIES MANAGER FOR THE CITY OF 

HURST,
TEXAS

 

                                                   V.

 

CHARLIE CANNON, PRO SE, D/B/A                                         APPELLEES

CHARLIE
CANNON CONTRACTING AND 

TED
DOOLAN

 

                                              ------------

 

            FROM
THE 96TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------








I.  Introduction

Appellants Allan Weegar,
Richard Ward, Allan Heindel, Eric Johnson, Charles Swearengen, Larry Kitchens,
Henry Wilson, Bill McLendon, Anna Holzer, and Bill Souder, all of whom are city
officials[1]
in Hurst, Texas, filed this interlocutory appeal from the trial court=s denial of their motion for summary judgment based on the affirmative
defense of official immunity.  In three
issues, appellants argue that the trial court erred by denying their motion for
traditional summary judgment and by overruling several of their objections to
the summary judgment evidence of appellees Charlie Cannon[2]
and Ted Doolan.  We reverse and render in
part and affirm and remand in part.








II.  Background Facts and
Procedural History

In December
2001 and April 2002, respectively, the City of Hurst (ACity@) contracted
with Owen Commercial Construction, Inc. (AOwen CC@) to perform
construction work on two projects, the Hurst Athletic Center (AHAC@) and the
Hurst Main Fire Station addition (AFire Station@).  Owen CC, as principal, and Commercial
Indemnity Insurance Company, as surety, executed a payment bond for the
projects.[3]








The City did not enter into a
contract with either appellee.  Appellee
Ted Doolan is a subcontractor who contracted with Owen CC in December 2001 and
in May 2002 to complete electrical work on the HAC and at the Fire Station,
respectively.  Appellee Charlie Cannon is
a subcontractor who contracted with Owen CC in July 2002 to complete masonry
work on the HAC.  Owen CC failed to pay
appellees for the work they did in relation to the Hurst projects.  According to appellees, they and the other
subcontractors told Johnson, the project manager for the City, that Owen CC was
not paying its subcontractors, and in response, Johnson directed them to
contact the bonding company regarding any and all payment issues.  Further, Jeff Young, Owen CC=s project manager for the Hurst projects, testified in his affidavit
that he told appellants Johnson, Weegar, and Heindel that Owen CC was not
paying its subcontractors, but the City continued to pay Owen CC for six
months.   

Owen CC ultimately failed to
complete the construction of the projects, and in April 2003, the City
terminated its contracts with Owen CC. 
City officials held a meeting with Owen CC=s subcontractors in which they informed the subcontractors of the
contract termination and told them Anot to set foot@ on any of
the job sites.  As a result, the
subcontractors could not access their supplies, which were located on the job
sites in locked storage containers. Appellees assert that the City used these
supplies to finish the projects without compensating the original
subcontractors. 








After the City terminated its
contract with Owen CC, Owen CC went out of business, and Commercial Indemnity
Insurance Company, the surety executing the bond payment, went into
receivership.[4]  After terminating the Owen CC contracts, the
City retained another general contractor to complete the construction of the
projects.[5]  Appellee Cannon filed suit against both Owen
CC and the City in December 2003, alleging fraud, negligence, and breach of
fiduciary duty; Cannon later added appellants to the suit.  The City filed a plea to the jurisdiction,
which the trial court granted, ultimately disposing of Cannon=s claims against the City itself. 

On January 10, 2006,
appellants filed a motion for summary judgment claiming that they were
protected from Cannon=s claims by
official immunity. Doolan joined the suit shortly thereafter as a
plaintiff.  Then, after receiving a barrage
of motions and responses, and after holding a hearing on appellants= motion for summary judgment, the trial court denied appellants= motion, concluding that appellees presented more than a scintilla of
evidence that raised a fact issue as to the existence of good faith.  Appellants filed this interlocutory appeal,
claiming that appellees= causes of
action against them are barred by official immunity and that the trial court
therefore erred by denying their motion for summary judgment.[6]









III.  Standard of Review

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
Civ. P. 166a(b), (c).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798. 








A defendant is entitled to
summary judgment on an affirmative defense if the defendant conclusively proves
all the elements of the affirmative defense. 
Rhone-Poulenc, Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999); see
Tex. R. Civ. P. 166a(b), (c).  To accomplish this, the defendant-movant must
present summary judgment evidence that establishes each element of the
affirmative defense as a matter of law.  Ryland
Group, Inc. v. Hood, 924 S.W.2d 120, 121 (Tex. 1996).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798. 
We discuss these standards in the context of official immunity later in
our opinion.

IV.  Admission of Summary Judgment Evidence

In their third issue,
appellants argue that the trial court erred by overruling several of their
objections to appellees= summary
judgment evidence.  Because the trial
court=s admission of appellees= evidence affected its decision to deny appellants= summary judgment motion, we address the third issue first.   

At the June 9, 2006 hearing
on appellants= motion for
summary judgment, appellees offered numerous affidavits and documents in
support of their argument that summary judgment based on official immunity was
not proper.  In response, appellants
submitted twenty-four written objections; the trial court sustained thirteen
and overruled eleven objections. 
Appellants argue that the trial court erred by overruling their
remaining eleven objections to appellees= evidence. 

A.  Objection to Exhibit B-6








Appellees
offered, and the trial court admitted, Exhibit B-6, a four-page exhibit
composed of copies of original petitions that Cannon obtained from the Tarrant
County District Clerk=s
office.  Exhibit B-6 contains two pages
of an original petition filed by Arlington Brick & Supply, Inc. against
Owen CC on December 12, 2002; the petition alleges that Owen CC breached its
fiduciary duty by failing to pay Arlington Brick & Supply, Inc. for Aprojects.@  The exhibit also contains two pages of a
petition filed by North Texas Concrete Structures, Inc. against Owen CC and the
City on August 1, 2005; the petition alleges that the City failed to obtain and
maintain a payment bond for the protection of subcontractors and that Owen CC
failed to pay its subcontractors.

Appellants objected to the
admission of this exhibit, arguing that the two petition excerpts were hearsay
documents and may not even have been related to the HAC and Fire Station
projects.  Appellees did not respond to
the hearsay portion of appellants= objection, but the trial court overruled the objection and considered
this evidence in evaluating the motion for summary judgment. 








At least two appellate courts
have held that pleadings from other lawsuits are proper summary judgment
evidence.  See Murillo v. Valley
Coca-Cola Bottling Co., 895 S.W.2d 758, 761 (Tex. App.CCorpus Christi 1995, no writ); Kazmir v. Suburban Homes Realty,
824 S.W.2d 239, 244 (Tex. App.CTexarkana 1992, writ denied); see also Gardner v. Martin, 345
S.W.2d 274, 276-77 (Tex. 1961) (court records from other cases are acceptable
summary judgment evidence).  Kazmir involved
a defendant who had participated in previous lawsuits.  824 S.W.2d at 244.  In a separate suit brought by a new party,
the plaintiff sought to introduce the pleadings from the defendant=s previous litigation as summary judgment evidence.  Id. 
The Kazmir court stated that Acourt records from other cases are acceptable summary judgment
evidence,@ and the
court considered the pleadings as proper evidence.  Id.

For court records to be
admissible as evidence in support of a motion for summary judgment, however,
copies of the records must be certified and attached to the motion.  See Gardner, 345 S.W.2d at 276-77; see
also Spencer v. City of Dallas, 819 S.W.2d 612, 615-18 (Tex. App.CDallas 1991, no
writ) (requiring nonmovant to meet same evidentiary
principles as movant when submitting response to summary judgment).  Here, neither of the petitions from the other
lawsuits that appellees attached to their summary judgment response appear to
be certified.  Therefore, the trial court
should not have considered them as summary judgment evidence.  See Gardner, 345 S.W.2d at 276-77.  In any event, both portions of the submitted
petitions alleged that Owen CC owed money to subcontractors, but neither
petition alleged what project the subcontractors had worked on for Owen
CC.  Therefore, even if we were to
consider the petition excerpts in our review, the information included in them
would not be relevant to the disposition of this case.  See Tex.
R. Evid. 401, 402. 

 

 








B.  Objections to Excerpts from Cannon=s Affidavit

Five of appellants= remaining objections involve statements admitted from Cannon=s affidavit.  The statements are
as follows:

In 25 years of contracting I
have never met a more ruthless and dishonest group of people than those working
for Owen Commercial Construction or been involved with a fiasco of the
magnitude of the Hurst jobs.

 

. . . .

 

I have never had money issues
before like I had on this job.  However,
on a couple of occasions I have had rough treatment.  I have found that going to the owner is an
effective remedy for these problems. 
They have the power over general contractors to make them pay the
subcontractors.  They usually want to
help because a sub-contractor can file a lien. 
For this reason it is in the best interest of owners to take steps to
insure that the general contractor pays the subcontractor.

 

. . . .

 

Hurst did not take the normal
steps you would expect to protect the subs . . . .

 

. . . .

 

Hurst officials could have
fixed this problem with a few simple precautionary steps, like issuing joint
checks, but they did nothing until the problem was completely out of hand and
then it was too late. . . .

 

. . . .

 








I hold the Hurst officials as
much to blame as Owen officials.  They
are as responsible for causing my damages as Owen CC.  Hurst officials were in the position to
control Owen CC.  The money issues were
brought to their attention and they did nothing.  I believe that their position in this matter
has been cold-hearted and irresponsible. 


 

Appellants objected to these
statements arguing that they were Aunsupported conclusory statements@ and, thus, not proper summary judgment evidence. 








Affidavits
in support of motions for summary judgment must be developed from someone with
personal knowledge, set forth such facts that would be admissible in evidence,
and establish that the affiant is competent to testify on the matters stated
therein.  Tex. R. Civ. P. 166a(f); Ryland Group,  924 S.W.3d at 122.  The objection that a statement is Aconclusory@ is an
objection that is frequently made to challenge affidavits in summary judgment
cases.  See Ryland Group, 924
S.W.3d at 122; Johnson v. Bethesda Lutheran Homes & Servs., 935
S.W.2d 235, 239 (Tex. App.CHouston [1st Dist.] 1996, writ denied).  Affidavits consisting only of conclusions are
insufficient to raise an issue of fact in response to a motion for summary
judgment.  Brownlee v. Brownlee,
665 S.W.2d 111, 112 (Tex. 1984) (holding that a statement in an affidavit that Ahis contractual obligation had been modified@ was nothing more than a legal conclusion and the affidavit should
have gone further to specify factual matters such as the Atime, place, and exact nature of the alleged modification@); Residential Dynamics, LLC v. Loveless, 186 S.W.3d 192, 198
(Tex. App.CFort Worth
2006, no pet.).  A conclusory statement
is one that does not provide the underlying facts to support the
conclusion.  Loveless, 186 S.W.3d
at 198.   








Despite
appellants=
contentions, Cannon=s affidavit
does not consist of unsupported conclusions. 
The affidavit does consist of Cannon=s opinions about the actions of Owen CC and appellants regarding the
construction projects at issue.  All of
the statements in Cannon=s affidavit
that the trial court considered in response to the motion for summary judgment
were based on Cannon=s personal
knowledge of the construction industry, an industry in which he had completed
over 1000 construction jobs in twenty-five years.  Based on his experience in the construction
industry and personal knowledge about the nature of the construction jobs at
issue, the opinions in Cannon=s affidavit could have been admitted at trial during his
testimony.  See Tex. R. Evid. 701 (providing that lay
witness may testify to opinions or inferences rationally based on that witness=s perception and helpful to a clear understanding of the witness=s testimony or the determination of a fact issue); Krishnan v. Law
Offices of Preston Henrichson, P.C., 83 S.W.3d 295, 300 (Tex.
App.CCorpus Christi
2002, pet. denied) (evaluating attorney=s personal
knowledge and experience in the legal field when determining whether or not to
consider attorney=s affidavit testimony as summary judgment
evidence); Larson v. Family Violence & Sexual Assault Prevention Ctr. of
S. Tex., 64 S.W.3d 506, 512 (Tex. App.CCorpus Christi
2001, pet. denied) (evaluating experience and personal knowledge of sexual
assault center director when determining whether to consider director=s testimony about
center=s financial
problems as summary judgment evidence).  Because Cannon=s affidavit was supported by facts and personal knowledge, the trial
court properly considered this evidence.  Loveless, 186 S.W.3d at 198.

C.  Objections to Excerpts from Doolan=s Affidavit

Four of
appellants= remaining
objections involve statements admitted from Doolan=s affidavit.  The statements are
as follows:

I made Eric Johnson, the project manager for Hurst aware, on numerous
occasions of the mismanagement and complete incompetence of Owen CC as a
General Contractor.  

 

. . . .

 

It has been stated to me by Jeff Young, project manager for Owen that
Trine Owen took over $900,000.00 out of Owen in the year 2002.  

 

. . . .

 

These payments were made even though no subcontractors were performing
any work on HAC and [the Fire Station] due to the lack of payments.  The projects were basically shut down in
December because of the lack of payment of monies owed that were way past due.  None of this money was distributed to the
subcontractors.  Hurst was well aware of
the serious financial issues of the subcontractors that needed to be addressed
and they continued to make these payments. 


 








. . . .

 

Even though the City of Hurst was fully aware of the false payment
affidavits and that payments to the subcontractors were not being properly made
to Owen=s
subcontractors they continued to pay Owen CC. 
Hurst clearly was irresponsible in the control that they had over the
payments to Owen CC and was not responsive to the needs and issues of the
subcontractors in the administration of said contracts.  It was quite apparent that Hurst knew the
payment affidavits were false and misrepresented.   

 

Appellants objected to the
second statementCthe
statement that Young allegedly made to DoolanCon the basis of hearsay.  See
Tex. R. Evid. 801(d).
Appellants objected to the other statements arguing that they were Aunsupported conclusory statements@ and, thus, not proper summary judgment evidence.

Appellants= hearsay objection should have been sustained.  Appellees do not identify any evidence in the
record showing that Young=s alleged
statement falls within a hearsay exception. 
Therefore, we will not consider this statement in our review.  See Tex.
R. Civ. P. 166a(f); Einhorn v. LaChance, 823 S.W.2d 405, 410
(Tex. App.CHouston [1st
Dist.] 1992, writ dism=d w.o.j.)
(op. on reh=g) (holding
that statements in affidavits based solely on hearsay are inadmissible as
summary judgment evidence); Lopez v. Hink, 757 S.W.2d 449, 451 (Tex.
App.CHouston [14th Dist.] 1988, no writ) (same).  








Further, the
statements within Doolan=s affidavit
referring to AHurst@ and the ACity of
Hurst@ knowing about the false payment affidavits and being aware of the
financial difficulties of the subcontractors were unsupported by the
record.  Appellees do not identify any
evidence in the record supporting these conclusory statements.  Although Young=s affidavit alleges that Weegar, Heindel, and Johnson all had
knowledge of Owen CC=s lack of
payment to the subcontractors, Young=s affidavit does not support the conclusion that all of the city
officials were aware of the lack of payment. 
Further, no other evidence supports the conclusion that individuals
other than Weegar, Heindel, and Johnson had knowledge of Owen CC=s financial dealings with the subcontractors.  Therefore, we will not consider these
statements in our review.  See
Brownlee, 665 S.W.2d at 112.  The
remaining portions of Doolan=s affidavit were either supported by facts and personal knowledge or
were supported by facts in other affidavits. 
Thus, the trial court properly considered this evidence.  Loveless, 186 S.W.3d at 198.

D. 
Objection to an Excerpt from Robin Mosier=s Affidavit

Robin Mosier was a subcontractor hired by Owen CC to perform heating
and air conditioning work on the Fire Station. 
Appellants= final
objection involved statements from Mosier=s affidavit.  The statements are
as follows:








The Project Manager on behalf of the City of
Hurst, stole over $50,000.00 worth of equipment and his response was Atough.@  His action put our financial
status with our suppliers in jeopardy and has cost us great financial
hardship.  The Project Manager
operated out of the line of conduct of his position, knowing that the Bonding
Company was insolvent, and purposely stole the materials from us and other
subcontractors, in an effort to complete the job, by personally guarantying
payment for several months by getting contractors to deliver to the job site
while knowingly defrauding contractors out of their materials, tools and labor.
 We were coerced into delivering
materials on the job site, thru promise of funding by the City Project Manager,
threat of lawsuit by Jeff Young and Ken Pope for failing to work, although
there was no payment made.  The job was
poorly managed with much of the work requiring to be redone due to poor
construction management skills on the part of the contractor and the City of
Hurst. [Emphasis added.]  

 

Appellants objected to the
emphasized statements as conclusory, and the trial court failed to identify
whether it granted or overruled the objection. 
We conclude that the trial court should not have considered the
emphasized statements as summary judgment evidence.  These statements are conclusory and
unsupported by other evidence, and we will not consider them in our review.  See Brownlee, 665 S.W.2d at 112.  The remaining, nonemphasized statements in
Mosier=s affidavit were either supported by facts and personal knowledge or
were supported by facts in other affidavits. 
Thus, we will consider the nonemphasized statements in the affidavit in
our review.  Loveless, 186 S.W.3d
at 198.








Having determined
that the trial court properly considered some portions of appellees= summary judgment evidence and erred by considering other portions, we
overrule appellants= third issue
in part and sustain it in part.  

V.  Summary Judgment Based on Official Immunity

In their
first and second issues, appellants argue that the trial court erred by denying
their motion for summary judgment on the grounds of official immunity. 

A.  Applicable Law

Texas courts
have long recognized common‑law official immunity for a variety of public
officials.  Ballantyne v. Champion
Builders, Inc., 144 S.W.3d 417, 423 (Tex. 2004).  Common‑law official immunity is based
on the necessity for public officials to act in the public interest with
confidence and without the hesitation that could arise from having their
judgment continually questioned by extended litigation.  Id. at 424; see Kassen v. Hatley,
887 S.W.2d 4, 8 (Tex. 1994); Baker v. Story, 621 S.W.2d 639, 643‑44
(Tex. Civ. App.CSan Antonio
1981, writ ref=d
n.r.e.).  The purpose of common‑law
official immunity is to protect public officials from being forced to defend
their decisions that were reasonable when made, but upon which hindsight has
cast a negative light.  Telthorster v.
Tennell, 92 S.W.3d 457, 463 (Tex. 2002).








Common‑law
official immunity is an affirmative defense. 
City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex. 1994); Perry
v. Tex. A & I Univ., 737 S.W.2d 106, 110 (Tex. App.CCorpus Christi 1987, writ ref=d n.r.e.).  This defense
protects government employees from suit arising from performance of their (1)
discretionary duties (2) performed in good faith and (3) within the scope of
their authority.  Ballantyne, 144
S.W.3d at 422; Chambers, 883 S.W.2d at 653; Freeman v. Wirecut
E.D.M., Inc., 159 S.W.3d 721, 729 (Tex. App.CDallas 2005, no pet.).  The
burden is on the defendant to establish all elements of the defense.  Chambers, 883 S.W.2d at 653;
Montgomery v. Kennedy, 669 S.W.2d 309, 310‑11 (Tex. 1984).

1.  Discretionary Duties








An action is
considered discretionary if it involves personal deliberation, decision, and
judgment.  Chambers, 883 S.W.2d at
654; Ramos v. Tex. Dep=t of Pub. Safety, 35 S.W.3d 723, 727
(Tex. App.CHouston [1st
Dist.] 2000, pet. denied).  In
determining if an act is discretionary, the issue is whether an employee was
performing a discretionary function, not whether he had the discretion to do an
allegedly wrongful act while discharging that function or whether the employee=s job description included discretionary duties.  Chambers, 883 S.W.2d at 653; Ramos,
35 S.W.3d at 727.  ADiscretionary acts are those related to determining what the policy of
the governmental unit will be, but do not extend to the carrying out of the
specifics of particular policies or exercise of >professional= or >occupational= discretion.@  Garza v. Salvatierra,
846 S.W.2d 17, 22 (Tex. App.CSan Antonio 1992, writ dism=d w.o.j.).

2.  Good Faith








To determine
whether a public official acted in good faith, we apply an objective standard
and must determine whether a reasonably prudent official, under the same or
similar circumstances, could have believed that his conduct was justified based
on the information he possessed when the conduct occurred.  Chambers, 883 S.W.2d at 656; see
also Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150, 164 (Tex. 2004);
Ballantyne, 144 S.W.3d at 426; Telthorster, 92 S.W.3d at 465; Freeman,
159 S.W.3d at 729.  The standard of good
faith as an element of common‑law official immunity is not a test of
carelessness or negligence, or a measure of an official=s motivation.  Joe, 145
S.W.3d at 164; Ballantyne, 144 S.W.3d at 426.  Additionally, A[t]his test of good faith does not inquire into >what a reasonable person would have done,= but into >what a
reasonable [person] could have believed.=A  Ballantyne, 144 S.W.3d
at 426; Telthorster, 92 S.W.3d at 465. 
It does not require the official to show that all reasonably prudent
officials would have made the same decision; rather, the official must show
only that a reasonable person, possessing the same information he had at the
time, could have believed his conduct was lawful.  Chambers, 883 S.W.2d at 656; Bowles
v. Yeganeh, 84 S.W.3d 252, 254 (Tex. App.CDallas 2002, no pet.); Smith v. Davis, 999 S.W.2d 409, 415
(Tex. App.CDallas 1999,
no pet.).

AOnce the defendant presents proof that a reasonable [person] in the
same or similar circumstances would have taken the same action, the burden
shifts to the plaintiff to show that no reasonable [person] in the
defendant=s position
could have thought the facts were such they justified the defendant=s act.@  Bowles, 84 S.W.3d at 254-55; Smith,
999 S.W.2d at 415.  A[P]robative evidence on the issue of good faith is limited to
objective evidence.@  Ballantyne, 144 S.W.3d at 427; see
Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997); Freeman,
159 S.W.3d at 730.  In Wadewitz,
the Texas Supreme Court concluded that Aa court must measure good faith in official immunity cases against a
standard of objective legal reasonableness.@  951 S.W.2d at 466.

3.  Scope
of Authority








Finally, in addition to the foregoing, a government official must
demonstrate that he was acting within the scope of his authority to be entitled
to common‑law official immunity. 
Public officials act within the scope of their authority if they are
discharging the duties generally assigned to them.  Ballantyne, 144 S.W.3d at 424; Chambers,
883 S.W.2d at 658.  AThe fact that a specific act that forms the basis of the suit may have
been wrongly or negligently performed does not take it outside of the scope of
authority.@  Wethington v. Mann, 172 S.W.3d 146,
152 (Tex. App.CBeaumont
2005, no pet.) (quoting Koerselman v. Rhynard, 875 S.W.2d 347, 350 (Tex.
App.CCorpus Christi 1994, no writ)).

B.  Analysis

1.  The Mayor and City Council Members

Appellees
claim in their petition that the mayor and city council members Ahad duties as principles to see that the management of Hurst=s affairs under the direction of Weegar went smoothly.@  Further, appellees allege that
the Anonfeasance@ of the City
officials in allowing the negligent distribution of payments to Owen CC was a
proximate cause of appellees= damages.  Finally, without
citing any legal authority, appellees argue on appeal that the affirmative
defense of official immunity is not available to the elected officials because Athey are being charged with >nonfeasance= for failure
to adequately investigate@ the
subcontractors= complaints.









First, torts may be based upon nonfeasance, or the omission to act. 
Montgomery Ward & Co. v. Scharrenbeck, 204 S.W.2d 508, 510-11
(Tex. 1947); Leon=s Shoe Stores v.
Hornsby, 306 S.W.2d 402, 409 (Tex. Civ. App.CWaco 1957, no
writ).  However,
appellees failed to provide evidence that the city council members and mayor
owed them a duty to ensure Owen CC paid them, or to ensure that payments to
Owen CC were discontinued.  In fact, the
Hurst City CodeCwhich
appellees provided to the trial court as summary judgment evidenceCdoes not list this duty under the powers or responsibilities of city
council members.








Further,
there is nothing in the record indicating that the city council members or
mayor knew that the subcontractors were not getting paid.  On the contrary, the summary judgment
evidence establishes that the only actions taken by the mayor and city council
members with regard to the City=s contracts with Owen CC were to consider and vote on approval and
termination of the contracts at city council meetings.  Appellees do not dispute that the city
council members and mayor were discharging their duties as city officials,
acting within their discretion, and acting in good faith when voting to
approve, and later terminate, the Owen CC contracts.  Even if the city council members and mayor
were negligent by failing to notice the alleged fraudulent payments to
Owen CC, negligence alone is not sufficient to show a lack of good faith.  See Joe, 145 S.W.3d at 164; Ballantyne,
144 S.W.3d at 426.  Accordingly, the
trial court erred by denying summary judgment in favor of the city council
members and the mayor on their affirmative defense of official immunity.  We sustain appellants= first and second issues as to the mayor and city council members.

2.  Weegar, Heindel, and Johnson 

Appellees allege
a right to recover tort damages against Weegar, Heindel, and Johnson because
they approved Owen CC=s pay
applications even though Owen CC was not paying the subcontractors.  Appellees do not dispute that Weegar, Heindel,
and Johnson were acting within the scope of their employment by approving Owen
CC=s pay applications.  Therefore,
we will focus on the other two elements of official immunity.








Citing Kassen,
appellees argue that the defense of official immunity is not available to
Weegar, Heindel, or Johnson because the discretion they exercised in
administering the City=s
construction contracts with Owen CC was Aoccupational@ discretion
that is practiced in the private sector, and not simply Agovernmental@
discretion.  887 S.W.2d at 9.  However, appellees= reliance on Kassen is misplaced.  In Kassen, the Texas Supreme Court
addressed the issue of whether Texas distinguishes medical from governmental
discretion in applying the doctrine of official immunity to government-employed
medical personnel, and it determined that once a government health-care provider
begins to treat a patient, the duty of care owed to the patient is no different
from the duty of care owed by any other medical professional.  Id. at 9-10.  The Kassen court based its conclusion
on the distinctive link between the health care provider and patient, and it
rejected the conclusion that official immunity is available only for activities
that are uniquely governmental.  Id.  In rejecting this Auniquely governmental@ test, the court observed that A[t]here are few activities that are uniquely governmental@ and that the official immunity would be Aa near nullity if its protection only extends to government employees
exercising >uniquely
governmental= functions.@  Id. at 10; see also
Mitchell v. City of Dallas, 855 S.W.2d 741, 745 (Tex. App.CDallas 1993), aff=d, 870 S.W.2d 21 (Tex. 1994) (noting that
the construction of a city park is a governmental function).








The summary
judgment evidence established that Weegar, Heindel, and Johnson all used
discretion in approving Owen CC=s pay applications.  Weegar
testified in his affidavit that there were no specific City rules, regulations,
or procedures that governed the approval or disapproval of the pay
applications, but rather that the decision was within his personal discretion
as City manager.  Weegar, Heindel, and
Johnson all testified that they made personal judgments regarding whether to
pay an application based on input from the City=s staff, recommendations from the City=s architects, and their own independent knowledge of Owen CC=s progress.  See Chambers,
883 S.W.2d at 654; Ramos, 35 S.W.3d at 727.  No summary judgment evidence controverted
this testimony.  Thus, the evidence shows
that Weegar, Heindel, and Johnson used discretion in deciding whether to make
payments to Owen CC.

We now turn
to the good faith element of appellants= official immunity defense, which the trial judge indicated was of the
most concern to him.[7]  As summary judgment evidence, appellants
offered affidavits from Weegar, Heindel, and Johnson.  Weegar and Heindel both averred as follows:

[Owen CC], as Principal, and
Commercial Indemnity Insurance Company, as Surety, provided payment and
performance bonds required by the TEXAS GOVERNMENT CODE for the two projects.

 

. . . .

 

. . . .  Unless I had knowledge of some construction
defect or other breach of the Construction Contracts of which the architects
who had certified payment did not have knowledge, I would sign the check for
payment to [Owen CC] in accordance with the certification of the architects and
the requirements of the terms of the contracts . . . .

 








. . . I would consider[[8]]
approval or disapproval of payments to [Owen CC] only when the payment
applications were first certified for payment by the architect on the
construction projects, and only after the . . . City Staff who were working on
the Project had reviewed the applications and recommended payment.

 

. . . .

 

. . . I was not aware of
[Owen CC=s]
payment records or whether payments were being properly made or improperly not
made to subcontractors.  I always acted
in good faith when it was necessary for me to take action in matters related to
payment made [by Owen CC] . . . . 

 

Johnson=s affidavit contained sworn statements similar to the first three
paragraphs quoted above, but in contrast to Weegar=s and Heindel=s averments
that they were not aware of Owen CC=s payment records, Johnson averred, AI was not aware of any attempt by [Owen CC] to commit the fraudulent
acts alleged by [appellees] . . . .  I
always acted in good faith when it was necessary for me to take action in
matters related to [Owen CC].@  Appellants concede Athat Johnson had knowledge of [the] subcontractors= claims that they were not being paid by Owen [CC].@ 













Appellants
also offered the construction contract documents as summary judgment
evidence.  The contract documents
required the City to make payments to Owen CC as certified by the architect;[9]
they also provided that late payments would accrue interest and that Owen CC
could stop work if the City failed to pay Owen CC after the architect certified
Owen CC=s right to payment.  Under
article 9.6.4 of Owen CC=s contract
with the City, the City did not Ahave an obligation to pay or to see to the payment of money to a
Subcontractor except as may otherwise be required by law.@[10]  But the contract documents
also provided that the City could terminate the agreement with Owen CC if Owen
CC failed to pay subcontractors Afor materials or labor in accordance with the respective agreements@ between Owen CC and the subcontractors.  To request payment from the City in
accordance with the contract documents, Owen CC had to first certify that it
had paid for all work completed on the particular project. 








Cannon and
Doolan both averred in their affidavits offered as summary judgment evidence
that they told Johnson that Owen CC was not paying the subcontractors for work
they had done.  Doolan also averred that
the City made payments to Owen CC as late as January 2003[11]
even though by then he was the only subcontractor working at one of the sites
because the rest had quit for lack of payment.[12]  Cannon testified that in his twenty-five
years of experience in contracting, he had never experienced Amoney issues@ like he did
with the Owen CC contract.  Further, in
prior jobs, Cannon found that property owners have Athe power over general contractors to make them pay the subcontractors@ and that the City Adid not take the normal steps you would expect to protect the subs@ such as Aissuing
joint checks.@  Doolan testified that the City "clearly
was irresponsible in the control they had over the payments to Owen CC and was
not responsive to the needs and issues of the subcontractors in the administration
of said contracts.@  Appellees both testified that they told
Johnson that the City should stop paying Owen CC because Owen CC was not paying
its subcontractors, and in response, Johnson told them to contact the payment
bond surety.

In addition
to their own affidavits, appellees offered the affidavit of Jeff Young, Owen CC=s project manager.  In his
affidavit, Young averred that he Apersonally explained the lack of payment problem@ to Weegar, Heindel, and Johnson, as well as the architectural firm
overseeing the projects.  He also stated
that six months before the City terminated the agreement with Owen CC, he told
the same people (1) that they needed to contact the bonding company and fire
Owen CC, (2) that there was no way Owen CC could finish these projects
financially, (3) that Mr. Owen had used the money allocated for the projects
for personal gain and that, Aaccording to Mr. Owen, he was not going to give that money back,@[13] and (4) that they should not approve any additional payment
applications from Owen CC. 








To meet
their burden of proof regarding good faith, Weegar, Heindel, and Johnson did
not need to establish that all city and project managers would have
approved Owen CC=s pay
applications, but only that reasonably prudent city and project managers, under
the same or similar circumstances, could have believed it was reasonable
to approve a general contractor=s pay application.  See Joe,
145 S.W.3d at 164; Telthorster, 92 S.W.3d at 465.  If Weegar, Heindel, and Johnson were able to
meet their burden of proof regarding good faith, appellees could defeat the
good faith argument only by establishing that no reasonable person in
the managers= positions
could have thought the facts were such that they justified payment.  See Chambers, 883 S.W.2d at
656-57.  Evidence that a reasonably
prudent project or city manager could have reached a different decision or that
the managers were negligent is insufficient to defeat good faith.  See Joe, 145 S.W.3d at 164;
Telthorster, 92 S.W.3d at 465; Chambers, 883 S.W.2d at 656.








Here,
contradictory evidence exists regarding the material facts underlying Weegar=s, Heindel=s, and
Johnson=s good faith claims.  See
Adams v. Downey, 124 S.W.3d 769, 772 (Tex. App.CHouston [1st Dist.] 2003, no pet.). 
Weegar and Heindel both averred that they had no knowledge that Owen CC
was failing to pay its subcontractors; appellees= evidence shows otherwise. 
Although Johnson concedes that he was aware of Owen CC=s failure to pay its subcontractors, he claimed that he was unaware of
any fraudulent activity by Owen CC.  But
his own summary judgment evidence showing that Owen CC had to certify on its
payment applications that all subcontractors were paid from prior payments
calls his testimony into question.  And
Young claimed in his affidavit that he told Johnson, Weegar, and Heindel not
only that Owen CC was not paying the subcontractors but also that Mr. Owen
never intended to pay them in the future and that the City kept paying Owen CC
even after learning this fact.  In
official immunity cases, summary judgment is improper when there are issues
concerning the underlying facts.  Adams,
124 S.W.3d at 774; Hayes v. Patrick, 71 S.W.3d 516, 522 (Tex. App.CFort Worth 2002, no pet.).








Weegar,
Heindel, and Johnson contend that even if it is undisputed that they knew Owen
CC was not paying the subcontractors, they nevertheless acted in good faith by
continuing to pay Owen CC because Owen CC had provided a payment bond pursuant
to the government code to protect the subcontractors in the event of a default
by Owen CC.[14]  See Tex.
Gov=t Code Ann. ' 2253.021(a).  They also contend
that the subcontractors had no chance of being paid in the future if the City
stopped paying Owen CC.  But appellees
offered evidence showing that the City continued to pay Owen CC even after all
of the subcontractors had already stopped working for lack of payment
and that Weegar, Heindel, and Johnson therefore knew that Owen CC=s payment applications indicating that all work had been completed and
that all subcontractors had been paid for that work were false and that new
subcontractors would need to be hired before the projects could be
completed.  For these reasons, we
conclude and hold that Weegar, Heindel, and Johnson did not conclusively prove
that reasonably prudent city and project managers, under the same or similar
circumstances, could have believed it was reasonable to approve
Owen CC=s pay applications.

See Adams, 124 S.W.3d at 774-75.

Because
appellants Weegar, Heindel, and Johnson failed to meet their burden of proof,
the trial court did not err by denying appellants= motion for summary judgment as to them.  See Rhone-Poulenc, Inc., 997 S.W.2d at
223.  Accordingly, we overrule appellants= first and second issues as to Weegar, Heindel, and Johnson. 

VI.  Conclusion








Having
sustained appellants= third issue
in part, and their first and second issues as to Souder, Ward, Swearengen,
Kitchens, McLendon, Holzer, and Wilson, we reverse the trial court=s order denying appellants= motion for summary judgment as to those appellants and render summary
judgment for those appellants on all of appellees= claims.  See Tex. R. App. P. 43.2(c).  But having overruled appellants= first and second issues as to Weegar, Heindel, and Johnson, we affirm
the trial court=s order
denying appellants= motion for
summary judgment as to them, and we remand that portion of the cause (as to
appellants Weegar, Heindel, and Johnson) to the trial court for further
proceedings.

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL B:   LIVINGSTON, WALKER,
and MCCOY, JJ.

DELIVERED: September 6, 2007











[1]Appellants=
names and titles are as follows:

 

1)     Allan
Heindel B
Deputy City Manager of Hurst

2)     Allan
Weegar B City
Manager of Hurst

3)     Eric
Johnson B
Project Manager for Hurst

4)     Bill
Souder B
Mayor of Hurst when the facts of this case occurred

5)     Richard
Ward B
Hurst City Council member when the facts of this case occurred; current Mayor
of Hurst

6)     Charles
Swearengen B
Hurst City Council member when the facts of this case occurred; current Mayor
Pro Tem

7)     Larry
Kitchens B
Hurst City Council member

8)     Henry
Wilson B
Hurst City Council member

9)     Bill
McLendon B
Hurst City Council member

10)   Anna Holzer B
Hurst City Council member





[2]Appellee
Cannon passed away after filing this appeal. 
In accordance with appellate rule 7.1(a), we have proceeded to
adjudicate this appeal Aas if
all parties were alive.@  Tex.
R. App. P. 7.1(a).





[3]A governmental entity that enters
into a public works contract with a general contractor must under certain
circumstances require the contractor to execute performance and payment bonds
before work begins.  Tex. Gov=t Code
Ann. ' 2253.021(a) (Vernon Supp.
2006).  The purpose of the payment bond
is to protect claimants who provide labor or materials in the construction of
public works because public property is protected from forced sale and therefore
may not be made the subject of a mechanic=s lien.  Redland
Ins. Co. v. Sw. Stainless, L.P., 181 S.W.3d 509, 511 (Tex. App.CFort Worth 2005, no pet.).





[4]The
record does not show the date that Owen CC went out of business; it states only
that Owen CC went out of business after the City terminated the contracts. 





[5]The
record does not show the date that the City hired a new general contractor
after terminating its contract with Owen CC. 





[6]Appellees
brought suit against appellants alleging (1) negligence per se against Weegar,
Johnson, and Heindel, (2) negligence against Weegar, Johnson, Heindel, Ward,
Swearengen, Kitchens, Wilson, McLendon, Holzer, and Souder, and (3) breach of
fiduciary duty against Weegar. 

 





[7]The
trial court stated on the record, AWe=re
dealing with . . . who knew what about the payment of the subs and whether or
not they=re
going to get paid.  And, quite frankly,
that=s the
area of concern for me.@ 





[8]Heindel=s
affidavit differs slightly from Weegar=s in this paragraph.  Instead, Heindel=s
affidavit reads, AI
would recommend approval or disapproval of [Owen CC=s]
payment applications only when the payment applications were first certified
for payment by the architect on the construction projects, after I personally
reviewed the payment applications, and only after the city staff who were
working on the Project informed me whether they recommended payment or not.@





[9]Under
the construction documents, the architect=s certification of Owen CC=s
right to payment was a representation Abased on the [a]rchitect=s
evaluation of the Work and the data comprising [Owen CC=s
payment request] that the Work ha[d] progressed to the point indicated and
that, to the best of the [a]rchitect=s knowledge, information and
belief, the quality of the Work [was] in accordance with@ the
contract documents.  The certification
did not require the architect to determine how or for what purpose Owen CC had
applied the proceeds of prior payments.





[10]Appellees
note that Owen CC breached their contract with the City by failing to pay the
subcontractors, and, thus, the City was under no obligation to continue to make
payments to Owen CC.  Although this may
be true, the contract does not prohibit the City from continuing to make
payments to Owen CC after a breach either. 






[11]The
City attached copies of payment certifications and cancelled checks to its motion
for summary judgment that confirm this allegation.





[12]The
affidavit from Robin Mosier, an air conditioning subcontractor, stated that
Azle Air Conditioning and Heating Service stopped work at the fire station
after January 4, 2003.





[13]Young
said, AHis
[Mr. Owen=s]
explanation to me personally was, . . . >that there was (X) amount of
dollars in profit in these projects when they were bid, so I am taking what is
mine.  It=s up
to you to find a way to finish the projects with what was left.=@





[14]Mosier
stated that the bond company was insolvent during part or all of the duration
of the Owen CC contract.  However, the
trial court properly sustained appellants= objection to the admission
of this testimony as a conclusory statement. 
Appellees= only
other evidence regarding the solvency of the bond company was in Exhibit B-6,
which we did not consider in our review.