Dallas County Sheriff Jim BOWLES
and Dallas County, Appellants,

v.

Mike YEGANEH, Appellee.

No. 05–01–00937–CV.

Court of Appeals of Texas,
Dallas.

March 14, 2002.

Grant Hugh Brenna, Assistant District Attorney, Dallas, for Appellant.

M. Michael Payma, Law Offices of Payma & Kuhnel, P.C., Dallas, for Appellee.

Before Justices KINKEADE, MORRIS, and BRIDGES.

## OPINION

Opinion By Justice KINKEADE.

Dallas County Sheriff Jim Bowles and Dallas County appeal a trial court's order denying their motion for summary judgment based on official and sovereign immunity. In three issues, Sheriff Bowles and Dallas County contend the trial court erred in holding they were not entitled to summary judgment on the basis of immunity because (1) Sheriff Bowles acted in good faith and therefore has official immunity; (2) Sheriff Bowles enjoys derivative judicial immunity; and (3) Dallas County has sovereign immunity because Sheriff Bowles has official immunity. Because Sheriff Bowles established his immunity by establishing the good faith of his deputies in conducting the sheriff's sale, we conclude the summary judgment evidence establishes Sheriff Bowles is entitled to

official immunity and Dallas County is entitled to sovereign immunity. We reverse the trial court's judgment and render judgment for Sheriff Bowles and Dallas County based on immunity.

## Factual Background

In September 1997, Data Transfer Associates, Inc. ("Data Transfer") filed suit against Faramir Khajehvoori, doing business as Rohiena Gallery. On February 6, 1998, the County Court at Law ordered a default judgment in that suit. The trial judge signed a writ of execution to enforce the judgment, ordering the Dallas County sheriff's office to execute the writ against property found at Rohiena Gallery. Pursuant to the writ, the sheriff's office seized property at the gallery.

Claiming some of the rugs that were seized belonged to him and not to Khajehvoori, Mike Yeganeh filed an application for temporary restraining order ("TRO") and temporary injunction in the same cause of action. Although the trial court initially signed a TRO enjoining the sheriff's office and Data Transfer from selling the property, it later found the TRO had been improperly obtained. Yeganeh again attempted to get a TRO in a new lawsuit, but failed to include Sheriff Bowles or Dallas County as parties. Pursuant to the petition in the new lawsuit, the trial court signed two more TROs against Data Transfer only, one which expired by its own terms before the Sheriff's sale was held, and one which the court later declared vacated, void, and "dissolved as a matter of law."

On August 5, 1998, the court, in the original lawsuit, issued a second writ of execution, ordering the sheriff's office to sell the property seized from Rohiena Gallery in satisfaction of the default judgment rendered in that case. On August 17, 1998, after the writ was properly served on the sheriff's office, Deputy Ray Hicks held a sheriff's sale and sold the seized property. Neither party disputes that no valid TRO existed at the time of the sheriff's sale.

After the sale, Yeganeh sued Sheriff Bowles and Dallas County, contending they improperly sold his property at the sheriff's sale. Sheriff Bowles and Dallas County filed a motion for summary judgment asserting the defenses of official and sovereign immunity. The trial court denied their motion, and Sheriff Bowles and Dallas County appealed.

The basis for Yeganeh's argument in responding to the claim of immunity is that, because the sheriff's office was aware that Yeganeh was asserting ownership over some of the property seized from Rohiena Gallery, the sheriff could not have acted in good faith in selling the property. Yeganeh's attorney, Masoud Payma, testified by affidavit that he personally served the sheriff's office writ enforcement section with two of the TROs and that he informed the sheriff's office that Yeganeh owned some of the seized property. According to Yeganeh, the sheriff's office should not have conducted the sale under these circumstances.

## Jurisdiction

◼ Texas appellate courts generally have jurisdiction only over final judgments; the denial of a summary judgment is interlocutory and unappealable unless a statute specifically authorizes an interlocutory appeal. *Novak v. Stevens,* 596 S.W.2d 848, 849 (Tex.1980). However, section 51.014 of the Texas Civil Practice and Remedies Code specifically allows appeal of some interlocutory orders, including an order denying a motion for summary judgment based on an assertion of immunity by an individual who is an officer or employee

of the state. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(5) (Vernon Supp.2002).

In this case, Sheriff Bowles and Dallas County moved for summary judgment based on the official immunity of Sheriff Bowles and the sovereign immunity of Dallas County. Dallas County's potential liability depends upon whether Sheriff Bowles is liable. If the Sheriff is protected by official immunity, the County is protected by sovereign immunity. *See DeWitt v. Harris Co.*, 904 S.W.2d 650, 654 (Tex.1995). We therefore have jurisdiction over both Sheriff's Bowles' and the County's claims that the trial court erred in denying their motion for summary judgment based on immunity claims. *See City of Coppell v. Waltman*, 997 S.W.2d 633, 634 (Tex.App.-Dallas 1998, pet. denied).

### Standard of Review

The standards for reviewing summary judgments are well established. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). For a defendant to prevail on summary judgment, he must show there is no genuine issue of material fact concerning one or more essential elements of the plaintiff's cause of action or establish each element of an affirmative defense as a matter of law. *See Elliott–Williams Co., Inc. v. Diaz*, 9 S.W.3d 801, 803 (Tex.1999); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 27 (Tex.1990).

### Official and Sovereign Immunity

Official immunity is an affirmative defense that protects government employees from personal liability. *Kassen v. Hatley*, 887 S.W.2d 4, 8 (Tex.1994). If the employee is entitled to official immunity, the governmental entity that he represents is entitled to sovereign immunity. *DeWitt*, 904 S.W.2d at 654.

█ A government employee is protected for the performance of discretionary acts within the scope of his authority if taken in good faith. *City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex.1994); *Waltman*, 997 S.W.2d at 636. An officer is not liable for damages resulting from the execution of a writ if he executes the writ in good faith and uses reasonable diligence in performing his official duties. TEX. CIV. PRAC. & REM.CODE ANN. § 34.061 (Vernon 1997).

█ Although Yeganeh argues otherwise, we agree with the Sheriff and Dallas County that the test for good faith set out in *Chambers* applies to this case. *See Richardson v. Parker*, 903 S.W.2d 801, 805 (Tex.App.-Dallas 1995, no writ) (applying *Chambers* good faith test in case involving immunity under 34.061 for constable who executed writ and sold property at sheriff's sale). The *Chambers* court held that an official acts in good faith if a reasonably prudent official, under the same or similar circumstances, would have acted in the same manner. *Chambers*, 883 S.W.2d at 656. It is not necessary for the official to show that all reasonably prudent officers could have made the same decision; rather, he merely has to show that a reasonable officer, possessing the same information he had at the time, could have believed his conduct was lawful. *Id.*; *Smith v. Davis*, 999 S.W.2d 409, 415 (Tex.App.-Dallas 1999, no pet.). Good faith may be established by the testimony of the defendant officers, if the testimony is clear, positive, direct, otherwise credible, free from contradiction, and readily controvertible. *Smith*, 999 S.W.2d at 415; *Waltman*, 997 S.W.2d at 637–38. Once the defendant presents proof that a reasonable officer in the same or similar circumstances would have taken the same action, the burden shifts to the plaintiff to show that *no* reasonable officer in the defendant's position could have thought the facts were such they justified the defen-

dant's act. *Smith,* 999 S.W.2d at 415; *Waltman,* 997 S.W.2d at 638 (citing *Chambers,* 883 S.W.2d at 657).

The Sheriff and Dallas County presented the following summary judgment evidence of good faith. Deputy Terrell testified by affidavit that he is the supervisor of the Writ Enforcement Section of the Dallas County Sheriff's Department, and that his office received a legally valid writ of execution on August 5, 1998 which he assigned to Deputy Hicks. He further stated that the actions taken by himself and Deputy Hicks were (1) taken pursuant to a facially valid writ, (2) done reasonably, (3) taken in a good faith belief that they were proper and within their discretionary duties; and (4) those that a reasonably prudent officer would have taken under the same or similar circumstances.

Deputy Hicks stated in his affidavit that he is a duly qualified and appointed deputy sheriff for the Dallas Sheriff's Department. He testified: (1) he was assigned a legally valid writ of execution received by his office on August 5, 1998; (2) all of his actions were taken pursuant to a facially valid writ of execution; (3) all his actions were taken in the good faith belief that they were proper; (4) he was never served with a restraining order enjoining him from selling the property in question; (5) the property was sold pursuant to the facially valid writ on August 17, 1998, after a legal notice had been posted at the Dallas County courthouse for at least ten days; (6) the Sheriff's Sale took place on August 17, 1998, at 10 a.m. as per the Notice of Sale; (7) the manner of the Sheriff's Sale was within his discretion; (8) his actions were not intended to harm Yeganeh but to fulfill the terms of the writ; and (9) his actions were those that a reasonably prudent officer would have taken under the same or similar circumstances.

Sheriff Bowles also filed an affidavit, stating that he has no personal knowledge of the facts of this case, but that writs of execution are assigned to the writ enforcement section of the sheriff's office, and Deputy Terrell is the supervisor of that section.

We conclude the affidavits establish the sheriff's sale was conducted in good faith. The facts of this case are very similar to the facts in *Richardson,* where the constable's office conducted a sheriff's sale pursuant to a writ of execution, even though Parker's attorney appeared before the sale asserting that there was a landlord's lien on the property. *Richardson,* 903 S.W.2d at 802–803. The court concluded that the constables' duty to levy on the property required them to conduct the sale, because they "were not tribunals to determine doubtful questions of fact." *Id.* at 805 (noting that under Texas Civil Practice and Remedies Code section 34.065, sheriffs have a duty to levy on writ of execution and can be held liable if they fail or refuse to levy, if levy can take place). According to the court, it was not the constables' duty, nor was it within their authority, to determine which of the competing liens had priority. *Id.* Because the affidavits, similar to the affidavits in this case, showed the officers acted pursuant to a facially valid writ of execution, their actions were taken in good faith, and a reasonably prudent officer under the same or similar circumstances could have taken the same action, the constables established their good faith. *Id.*

Likewise, the sheriffs' affidavits in this case establish that a reasonably prudent officer in either Deputy Hicks' or Deputy Terrell's position could reasonably have acted in the same manner they did. The deputies, being in possession of a legal writ of execution, had a duty to hold a sheriff's sale. The TRO did not enjoin

them from conducting the sale and they had no authority to determine disputed ownership issues. Because the Sheriff met his burden that his officers were acting in good faith, the burden shifted to Yeganeh to controvert the proof of good faith. Yeganeh points to the deposition testimony of Deputy Hicks, the deputy who conducted the sale, where Deputy Hicks stated that had he been aware of the second TRO, he probably would have "gotten a resolution" of the ownership issue before conducting the sale. Because Deputy Hicks was the deputy who conducted the sale, however, he cannot controvert his own affidavit by saying that had he been in possession of facts other than what he knew at the time, he might have acted differently. His testimony as to what he might have done differently if he had known different facts is irrelevant; to controvert good faith, the plaintiff is required to show no reasonable person *in the defendant's position* could have thought the facts were such they justified the defendant's actions. *See Chambers*, 883 S.W.2d at 657. Further, to the extent Yeganeh is arguing Deputy Hicks' testimony controverts Deputy Terrell's affidavit, Deputy Hicks' statement at best could establish only that one officer in Deputy Terrell's position (assuming Deputy Terrell knew about the TRO) might have done something different, not that no reasonable officer in Deputy Terrell's position could have thought the facts justified his actions. *See id.*

We conclude Yeganeh failed to controvert Sheriff Bowles' evidence of good faith, and therefore Sheriff Bowles is entitled to immunity. Because Sheriff Bowles is entitled to official immunity, Dallas County is entitled to sovereign immunity. *See DeWitt*, 904 S.W.2d at 654. The trial court erred in denying summary judgment. We reverse the trial court's denial of the sum-

mary judgment and render judgment that Yeganeh take nothing by his suit.