Don **FREEMAN**, Appellant,

v.

**WIRECUT E.D.M., INC.**, Appellee.

No. 05–04–00440–CV.

Court of Appeals of Texas, Dallas.

Feb. 16, 2005.

---

Grant Hugh Brenna, Assistant District Attorney, Dallas, for Appellant.

Randall Yazbeck, Dallas, for Appellee.

Before Justices WRIGHT, FITZGERALD, and LANG–MIERS.

## OPINION

Opinion by Justice FITZGERALD.

Deputy Constable Don Freeman brings this interlocutory appeal challenging portions of the trial court's order denying certain of his pleas to the jurisdiction and motions for summary judgment in this case. In four issues, Freeman challenges the trial court's jurisdiction over the subject matter of the suit and argues he is immune from liability for claims brought against him. We agree with the trial court on all grounds appealed, and we affirm its order.

### BACKGROUND

Appellee Wirecut E.D.M., Inc. leased a Robofil Model 6020 Wire E.D.M. machine (the "Machine") and came to be in default on the lease. The lessor obtained a writ of sequestration in the 116th Judicial District Court. Freeman was assigned to enforce the writ, and he did so with the help of Moving Services Company. According to Wirecut, at the time of the seizure of the Machine, Wirecut informed Freeman of the delicate nature of the Machine and gave him information on how to move, transport, and store the Machine safely, but Freeman and Moving Services did not follow those instructions. When Wirecut recovered the Machine, the Machine was damaged.

Wirecut sued Freeman and the moving company for damage to the Machine. The case was assigned to the 193rd Judicial District Court. The live petition pleaded a claim for negligence in executing the writ. It also pleaded two claims related to the care of the property after execution of the writ, citing sections 34.061 and 62.061 of the Texas Civil Practice and Remedies

Code. Freeman answered and filed a series of pleas to the jurisdiction, motions for summary judgment, and motions to dismiss and/or sever. The trial court granted Freeman summary judgment on immunity grounds on the negligent-execution claim. However, the trial court denied the remainder of the pleas and motions.

In this Court, Freeman challenges the trial court's rulings related to both of Wirecut's statutory claims. As to the section 34.061 claim, Freeman argues the trial court had no jurisdiction over the subject matter of the suit. And as to the section 62.061 claim, Freeman argues he is immune. Because this is an interlocutory appeal, we address these jurisdictional and immunity issues without regard to the merits of Wirecut's claims.

### STANDARDS OF REVIEW

■ A plea to the jurisdiction is a dilatory plea; its purpose is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex.2000). The plea challenges the trial court's authority to determine the subject matter of a pleaded cause of action. *Tex. State Employees Union/CWA Local 6184 A.F.L.C.I.O. v. Tex. Workforce Comm'n,* 16 S.W.3d 61, 65 (Tex.App.-Austin 2000, no pet.). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Id.*

The standard of review in a traditional summary judgment proceeding is well established. *See* TEX.R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). A defendant moving for summary judgment on the basis of an affirmative defense must plead and conclusively establish each essential element of that defense. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

### SUBJECT MATTER JURISDICTION

Freeman's first issue challenges the trial court's refusal of his plea to the jurisdiction related to section 34.061 of the civil practice and remedies code. Section 34.061 is titled "Duty Toward Seized Personalty; Liability," and it states in relevant part:

> If an injury or loss to an interested party results from the negligence of the officer, the officer and his sureties are liable for ... the amount of the injury sustained, plus 10 percent of that value or amount. The total amount is recoverable on motion of the injured party *filed with the court that issued the writ,* following three days' notice.

TEX. CIV. PRAC. & REM.CODE ANN. § 34.061(b) (Vernon 1997) (emphasis added).

■ Freeman argues that if an officer is charged with negligently injuring seized property, any claim against him can only be brought in the identical district court that issued the writ allowing the seizure. In this instance, Freeman argues that only the 116th judicial district had jurisdiction to hear Wirecut's claims under section 34.061, because the 116th was where the sequestration writ was issued. Freeman's sole authority for this proposition is the above-emphasized statutory language. We do not read the statute so narrowly.

■ A Texas district court is a court of general jurisdiction, and all claims are presumed to fall within the jurisdiction of the district court unless the legislature has provided that they must be heard elsewhere. *Dubai Petroleum Co. v. Kazi,* 12 S.W.3d 71, 75 (Tex.2000). Thus, we presume the district court has subject matter jurisdiction unless a showing can be made

to the contrary. *Id.*[1] We disagree with Freeman that, in this case, the statute's grant of a right to recover in "the court that issued the writ" somehow limits the subject matter jurisdiction of all Dallas County district courts except the 116th. "[J]urisdictional statutes speak to the court's power rather than to the parties' rights or obligations." *Subaru of America, Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex.2002). We read section 34.061 to speak specifically to a party's rights, not to a court's power. Accordingly, we conclude section 34.061 does not limit the jurisdiction of any district court of Dallas County with general jurisdiction.

■ Moreover, to the extent the statute speaks to "a motion filed with the court that issued the writ," noncompliance with this procedure would not affect the jurisdiction of another district court. Our supreme court has recognized that not every statutory prerequisite to suit is a jurisdictional requirement. *See Dubai Petroleum*, 12 S.W.3d at 76. When a statutory prerequisite makes no substantive change in the court's inherent power, it will not be treated as jurisdictional. *See, e.g., Hartford Underwriters Ins. Co. v. Hafley*, 96 S.W.3d 469, 473 (Tex.App.-Austin 2002, no pet.) (where statute's requirement affected only venue, it was not jurisdictional).

We also reject Freeman's argument that the 116th court "has the right to preside over any disputes arising out of the execution of its own writ of sequestration." Wirecut's suit does not include a challenge to the writ in any form. In this case, the trial court that had issued the writ might have had more familiarity with the facts underlying the parties' dispute. The parties could have asked for a transfer to that issuing court; the record indicates neither party did so. Regardless, familiarity with a case is not the same as exclusive jurisdiction over that case.

We conclude Freeman's jurisdictional challenge to the 193rd Judicial District Court is without merit.

■ Next, Freeman points out that the title of chapter 34 of the civil practice and remedies code is "Execution on Judgments." He argues that, because the proceeding at issue was not an execution on a judgment, the sections within that chapter are inapplicable to this case, so that "even if Wirecut had properly filed this section 34.061 action in the 116th, there would be no remedy." Initially, we note our legislature's directive that "the heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." Tex. Gov't Code Ann. § 311.024 (Vernon 1998). Moreover, we conclude Freeman's argument here is not a jurisdictional one. The argument does not address the court's authority to hear Freeman's section 34.061 claim. Instead, it

---

1. For example, the legislature has created certain criminal district courts that do not possess the civil jurisdiction of other district courts. *See, e.g.,* Tex Gov't Code Ann. § 24.910 (Vernon 2004) (certain "criminal district courts have jurisdiction of criminal cases within the jurisdiction of a district court.").

The legislature has also created juvenile courts pursuant to its constitutional power to create "specialized courts." *See, e.g., In Matter of G.C., Jr.,* 980 S.W.2d 908, 910 (Tex. App.-Corpus Christi 1998, pet. denied) (citing Tex. Const., art. V, § 1). These juvenile courts are separate from the district courts specifically referred to in article V, section 7 of the Texas Constitution. *Id.* But a district court may be designated a juvenile court. Tex. Gov't Code § 23.001. Such a designation would yield "a court which, although presided over by a district judge, has substantial attributes wholly at variance with some that are recognized as normally belonging to a district court." *Matter of G.C., Jr.,* 980 S.W.2d at 910.

merely speaks to whether or not this plaintiff has a claim under this statute. No possible answer to that question will rob the trial court of jurisdiction and require dismissal of Wirecut's suit. *See Smith v. Univ. of Tex. Southwestern Med. Ctr. of Dallas,* 101 S.W.3d 185, 188 (Tex.App.-Dallas 2003, no pet.) ("Dismissing a cause of action for lack of subject-matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court."). Accordingly, the question is not properly before this Court on interlocutory appeal.

We resolve Freeman's first issue against him.

### IMMUNITY

Freeman's second, third, and fourth issues complain of the trial court's failure to find as a matter of law that he was immune from liability for any violation of section 62.061. That section states:

> The officer is liable for injuries to the sequestered property resulting from his neglect or mismanagement or from the neglect or mismanagement of a person to whom he entrusts the property.

TEX. CIV. PRAC. & REM.CODE § 62.061(c). Freeman raises three arguments here, averring his immunity is sovereign, judicial, and official.

### *Sovereign Immunity*

■ First, Freeman posits that, when he acts in the course and scope of his employment, he is entitled to the same sovereign immunity as his employer, Dallas County. Freeman asks this Court to look at the legal theories under which his summary judgment motion succeeded. Under those theories—official immunity, derived judicial immunity, and statutory immunity pursuant to section 7.003 of the civil practice and remedies code—the trial court necessarily found that Freeman was

acting within the scope of his authority while executing the sequestration writ. Freeman argues that this finding is now the law of the case and that the finding, in effect, transforms the lawsuit. Wirecut sued Freeman in his individual capacity. But according to Freeman, the trial court's implicit scope-of-authority finding essentially transforms the suit into one against Freeman in his official capacity, which in turn transforms the suit into one against Dallas County. Thus, according to Freeman, because the County would have sovereign immunity, he should as well.

There are a number of fundamental errors in this legal reasoning: at this juncture, we address only two. At the outset, the trial court's implicit finding of scope of authority pertained only to Freeman's conduct while executing the writ. The claims before us relate to his conduct in safeguarding the sequestered property after the writ was executed. These are not equivalent factual issues so that we may assume Freeman was for all purposes, at all times, acting within the course and scope of his authority.

Moreover, if the trial court's finding were relevant to these claims, it would speak only to whether—at the time of the allegedly negligent conduct—Freeman was discharging the duties generally assigned to him. *See Ballantyne v. Champion Builders, Inc.,* 144 S.W.3d 417, 424 (Tex. 2004). That issue is relevant to whether Freeman is entitled to the qualified immunities that were at issue in the granted summary judgment motions. *See, e.g., id.* (official immunity). It is a different issue from the capacity in which Freeman was sued, i.e., in his individual or official capacity. This second issue relates to who is liable for the prohibited conduct of negligently failing to safeguard sequestered property. The statute tells us "the officer" is liable. *See* TEX. CIV. PRAC. & REM.

CODE § 62.061(c). The statute does not make the officer's employer liable. Thus, when making a claim under this statute, the property owner correctly brings the suit against the officer in his individual capacity because he is the proper defendant. Freeman conflates the question "who can be sued for the prohibited conduct?" with one element of the question "who is entitled to immunity for different prohibited conduct?". The questions are not the same, and answering one question does not suffice to answer the other.

■ The inevitable result of Freeman's understanding of sovereign immunity would be a system in which any governmental employee who committed a wrongful act while in the course and scope of his authority would be absolutely immune. That is not, and cannot be, the law. Sovereign immunity by its very nature attaches only to a governmental entity, not to individuals employed by that entity. *See DeWitt v. Harris County,* 904 S.W.2d 650, 653 (Tex.1995) (distinguishing between sovereign immunity, which protects governmental entities, and official immunity, which protects individual officials). We conclude Freeman's claim of sovereign immunity fails completely. Accordingly, the trial court correctly denied Freeman's plea to the jurisdiction to the extent it relied upon sovereign immunity.

We decide against Freeman on his second issue.

### Derived Judicial Immunity

■ In Texas, a judge acting in his or her official judicial capacity is absolutely immune from liability for judicial acts performed within the scope of jurisdiction. *See Dallas County v. Halsey,* 87 S.W.3d 552, 554 (Tex.2002) (citing *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978)). When a judge delegates another person to perform services

for the court, or when a person otherwise serves as an officer of the court, the judge's immunity "follows" that delegation or court employment. *Halsey,* 87 S.W.3d at 554. The person acting in such a capacity also enjoys an absolute immunity, which we call derived judicial immunity. *Id.*

■ Freeman moved for summary judgment arguing he is entitled to derived judicial immunity from the liability created by section 62.061. Freeman relies primarily upon two cases for the proposition that he is entitled, as a deputy constable executing writs, to derived judicial immunity. One of the cases is not helpful to this particular analysis: *Bowles v. Yeganeh,* 84 S.W.3d 252 (Tex.App.-Dallas 2002, no pet.) is resolved on the issue of official immunity, and the court does not reach the issue of judicial immunity. The second case, *Merritt v. Harris County,* 775 S.W.2d 17 (Tex.App.-Houston [14th Dist.] 1989, writ denied), does address the liability of constables charged with executing writs. *Merritt* states that the constables:

> are conferred with judicial immunity, subject to liability under § 34.061, TEX. CIV. PRAC. REM.CODE ANN. (Vernon 1986), when executing court writs so long as they in good faith and diligently execute the writ as provided by law and the Rules of Civil Procedure. TEX. CIV. PRAC. REM.CODE ANN. § 7.003 (Vernon 1986). § 34.061 places a duty upon the constables to keep securely all personal property which has been levied upon by the officers.

*Id.* at 23. This brief quotation establishes at least three propositions: (1) constables have judicial immunity while executing writs; (2) section 7.003 qualifies that immunity by adding the requirements of good faith and diligence in the execution; and (3) section 34.061 is a statutory excep-

tion to the immunity. *See id.* The first two propositions are not relevant to this appeal: the conduct at issue here involves safeguarding sequestered property *after* the writ is executed, not the execution itself. Accordingly, the qualifications to immunity established by section 7.003 are not applicable in this case. *See* TEX. CIV. PRAC. & REM.CODE § 7.003(a) (officer not liable for damages "resulting from the execution of a writ"). Judicial immunity, if it applies to section 62.061 claims, remains absolute.

However, the third *Merritt* proposition—that the statutory duty embodied in section 34.061 is an exception to judicial immunity—is helpful here as an analogy. Indeed, the only way to give meaning to the statutory duty embodied in section 62.061 is if it too is an exception to judicial immunity. The liability created by section 62.061 would be meaningless if all constables required to safeguard sequestered property were absolutely immune from that liability. We may not read a statute so as to render its language meaningless. On the contrary, we must presume that the legislature, by enacting the statute, intended "a result feasible of execution." TEX. GOV'T CODE ANN. § 311.021(4) (Vernon 1998); *see also In re Missouri Pacific R. Co.,* 998 S.W.2d 212, 216 (Tex.1999). Accordingly, we conclude section 62.061—like section 34.061—is a legislatively created exception to judicial immunity. *See Merritt,* 775 S.W.2d at 23 (section 34.061 is exception to judicial immunity).

We conclude derived judicial immunity does not apply to a section 62.061 defendant. We decide Freeman's third issue against him.

### Official Immunity

■ Finally, Freeman moved for summary judgment arguing that he is entitled to official immunity from Wirecut's section 62.061 claims. The law provides that a qualified immunity inures to all governmental officials or employees who perform discretionary functions in good faith and within the scope of their authority. *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). This qualified immunity has been applied to individuals involved in the execution of writs. *See Bowles,* 84 S.W.3d at 254 (sheriff); *see also* TEX. CIV. PRAC. & REM.CODE § 7.003(a) (qualified statutory immunity for officer executing writ). Indeed, as has been discussed, Freeman prevailed in the trial court on immunity grounds for Wirecut's claims against him for any damages associated with the actual execution of the writs. Although Wirecut argues official immunity should not apply in this case, we find no principled reason to except a section 62.061 defendant from the reach of official immunity.

■ Having concluded that official immunity extends to a section 62.061 defendant, we next ask whether Freeman established as a matter of law that his conduct entitled him to the benefits of official immunity. Official immunity protects public officials from suit arising from performance of their (1) discretionary duties (2) performed in good faith and (3) within the scope of their authority. *Ballantyne,* 144 S.W.3d at 422. In this case, the only element contested during the summary judgment procedure was whether Freeman acted in good faith in safeguarding the Machine after it was sequestered. To determine whether a public official acted in good faith we apply the test adopted in *Chambers* and ask whether a reasonably prudent official, under the same or similar circumstances, could have believed that his conduct was justified based on the information he possessed when the conduct occurred. *Id.* at 426. This test of good faith does not in-

quire into what a reasonable person would have done, but into what a reasonable person could have believed. *Id.* In making this inquiry, we rely solely on objective evidence. *Id.* at 428.

Freeman attempted to establish good faith as a matter of law through his own affidavit testimony and through the affidavits of Constable Mike Dupree and Chief Deputy Constable Robert McIntyre. Freeman described his version of the facts surrounding the sequestration of the Machine, concluding "I believe in good faith that any reasonable person in the same position could have thought the facts were such that they justified my actions." Dupree and McIntyre, in identical language, state they are "familiar with the facts of July 2001 as they relate to this lawsuit."[2] Then each goes on to conclude that "[u]pon reviewing the facts, I believe that any reasonable person in Freeman's position could have thought the facts were such that they justified his actions." These conclusions by the constables speak appropriately to the *Chambers* reasonable-belief standard of good faith.

However, the constables can establish good faith through their own testimony only if that testimony is "clear, positive, direct, otherwise credible, free from contradiction, and readily controvertible." *See Bowles,* 84 S.W.3d at 254. In other words, Freeman cannot successfully establish good faith as a matter of law if significant relevant facts on which he depends are controverted. We conclude significant facts on which the constables' affidavits rely to reach their good-faith conclusions are in fact controverted. Freeman testified that Wirecut's employees:

refused to answer [the mover's] repeated request for technical information and also refused to tender the manufacturer's guide book to him. They also refused my requests for assistance in moving the equipment.

Both Dupree and McIntyre testified that the Wirecut employees "were combative and hostile, and refused to provide any technical instructions." But Wirecut offered affidavit testimony contradicting this version of the facts underlying the damage to the Machine. Kenneth Hill, president of Wirecut, testified he personally rode with Freeman in Freeman's vehicle to the location of the Machine and explained to Freeman the delicate nature of the Machine and the need for him to take care in moving it. Alain Michout, the Wirecut employee who was served with the writ by Freeman, testified that he personally gave Freeman the manual on how to prepare the Machine for a move and how to move it. He further testified that he told Freeman the movers did not have the right equipment to move the Machine. He stated that neither Freeman nor the movers used the manual or followed the instructions in the manual in preparing or moving the Machine. Michout's affidavit includes specific descriptions of ways in which the Machine was handled, moved, and stored that were contrary to the manual's directives and that would have caused damage to the Machine.

We conclude a genuine issue of material fact exists as to Freeman's good faith in safeguarding the Machine. The trial court did not err in denying summary judgment on the ground of official immunity for

---

**2.** Neither Dupree nor McIntyre were present at the time the writ was executed or at the time the Machine was taken into custody and moved. They do not explain the source of their information concerning the "facts of July 2001 as they relate to this lawsuit." Because their affidavits condone the actions of Freeman, we assume their understanding of the "facts of July 2001 as they relate to this lawsuit" comports with Freeman's understanding of those facts, as expressed in his own affidavit testimony.

claims brought by Wirecut under section 62.061. We decide Freeman's final issue against him.

## CONCLUSION

We have resolved each of Freeman's issues against him. We affirm the trial court's order.