Affirmed and Memorandum Opinion filed November 29, 2007








Affirmed
and Memorandum Opinion filed November 29, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-07-00040-CV

____________

 

STAN H. LOOPER AND CYNTHIA M. SCOTT, Appellants

 

V.

 

HOUSTON COMMUNITY COLLEGE SYSTEM,
BRUCE LESLIE, DIANA CASTILLO, AND REYNALDO GARAY, Appellees

 



 

On Appeal from the 152nd
District Court

Harris County, Texas

Trial Court Cause No. 2004-50706

 



 

M E M O R A N D U M   O P I N I O N

Appellants, Stan H. Looper and Cynthia M. Scott, appeal the
trial court=s grant of summary judgment on claims of breach of
contract, defamation, intentional infliction of emotional distress, negligent
hiring, and violations of the Texas Whistleblower Act in favor of appellees,
Houston Community College System (AHCCS@), Bruce Leslie,
Diana Castillo, and Reynaldo Garay.  We affirm. 








I. 
BACKGROUND

HCCS is
a two-year public college governed by a nine-member board of trustees.  Bruce
Leslie served as chancellor and chief executive officer for HCCS from 2001 to
2006.  HCCS is divided into six colleges, each of which is governed by a
president who reports directly to the chancellor.  Scott was employed in
student counseling with HCCS from 1999 to 2006. 

In
December 2002, Diana Castillo was named the interim president at HCCS=s Southeast College.  Olga Flores was
a potential candidate for the Southeast College interim president position as
well; however, she was appointed dean of student development at Southeast
College.  Thereafter, a conflict arose between Castillo and Flores that
escalated to a lawsuit filed by Flores.[1]  








As the
dean of student development, Flores promoted Scott to counseling chair at
Southeast College.  Flores later told Scott about a letter, dated March 1,
2003, written by Castillo to Garcia.  According to Scott, the letter indicated
that Castillo had conspired with Garcia and other trustees to move Flores into
the dean of student services position so that she would not be considered for
the position of president of Southeast College.  The same year, Castillo was
accused of inappropriately using HCCS funds and resources to aid Herlinda
Garcia in her bid for re-election to the HCCS board of trustees.  Castillo was
investigated by the Harris County District Attorney=s Office for abuse of official
capacity and tampering with a government record.  On May 14, 2004, Scott made a
verbal complaint to the Human Resources department at HCCS, complaining that
(1) Castillo was inappropriately criticizing Scott=s staff and (2) Castillo=s negative attitude towards Flores
and Flores= staff was likely the result of Castillo=s continuing effort to remove
Flores.  Scott also told HR about the contents of the Castillo letter because
she believed that Castillo had abused her official capacity and continued to do
so.  The same month, the Harris County District Attorney=s Office closed its investigation
with no criminal charges filed.

On June
14, 2004, Scott filed her first written grievance alleging that she was the
subject of retaliation by Castillo due to her previous May 2004 complaint to
Human Resources.  Scott further alleged that her husband, Looper, became a
target of retaliation when he was terminated from his position with Project
GRAD.  Project GRAD is a non-profit organization that works with HCCS on
various academic summer programs.  Scott also complained that Castillo
published two libelous letters about Looper and his work with Project GRAD.  On
the same day, Scott filed a second grievance requesting Arelief from the retaliatory
environment@ created by the Flores-Castillo lawsuit.  

In June
2004, Flores took a medical leave of absence.  The following month,  Reynaldo
Garay was appointed interim assistant dean of student development while Flores
was on leave.  Scott expressed her disagreement with Garay=s appointment; Scott believed she
should have been appointed into the position because Garay was her
subordinate.  On June 28, 2004, Scott filed a third grievance, alleging that
Castillo retaliated against her by giving her less prestigious assignments and
purposefully undermining her authority.

On
September 15, 2004, Looper and Scott filed suit against HCCS, Leslie, and
Castillo for breach of contract, defamation, intentional infliction of
emotional distress, tortious interference, and violations under the Texas
Whistleblower Act (ATWA@).  The following month, a confrontation erupted between
Castillo and Scott wherein Castillo filed a criminal complaint against Scott to
the HCCS police.  On November 17, 2004, Scott filed a fourth grievance complaining
about Castillo=s continuing retaliation, including the HCCS police report.








In
November 2004, Orfelina Garza was appointed president of Southeast College. 
Castillo was reassigned to an administrative position at another HCCS college
and Flores resigned.  On December 7, 2004, Scott filed a fifth grievance
complaining that during Castillo=s term as interim president at
Southeast College, Scott was improperly passed over twice for the assistant
dean of student development position.  

Southeast
College began its selection process for the permanent assistant dean of student
development position the following year.  Scott was on the interview screening
committee.  On June 8, 2005, Scott informed the screening committee chair that
Garay had falsified information on his application for the assistant dean
position; namely, that he had previously served as an interim assistant dean. 
Scott was later removed from the screening committee.[2] 
On August 2, 2005, Scott filed a sixth grievance complaining that she was
improperly removed from the screening committee due to Garay=s false allegations.  Scott also
reported to the Harris County District Attorney=s Office that Garay had falsified
information on his application.  In November 2005, Garay became the dean of
Southeast College.  In January 2006, Scott resigned from HCCS. 

In 2006,
Looper and Scott amended their suit and added Garay, Castillo and Leslie as
defendants.  Scott asserted (1) claims for TWA violations against HCCS,
Castillo, Leslie, and Garay; (2) defamation claims against Castillo, Leslie,
and. Garay; (3) intentional infliction of emotional distress claims against
Castillo, Leslie, and Garay; and (4) a negligent hiring and retention claim
against Leslie.   Looper asserts a (2) breach of contract claim against HCCS,
(2) defamation claim against Castillo, and (3) tortious interference claims
against Castillo and Leslie. Garay=s first motion for summary judgment
was denied.  Subsequently, appellees filed traditional and no-evidence motions
for summary judgment.  The trial court granted each motion for summary
judgment.








Appellants
raise five issues for review, arguing that the trial court erred in granting
appellees= motions for summary judgment because (1) appellants raised genuine
issues of fact as to one or more of the essential elements of their breach of
contract and tort claims; (2) appellees failed to establish immunity; (3) Scott
raised fact issues as to her TWA claim; (4) Scott=s constructive discharge claim meets
the requirements of section 554.005 of the TWA; and (5)  the trial court has
jurisdiction over Scott=s TWA claims against Garay.

II. STANDARD OF REVIEW

We
review a grant of summary judgment under a de novo standard.  Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005), and where the
trial court grants the judgment without specifying the grounds, we affirm the
summary judgment if any of the grounds presented are meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872B73 (Tex. 2000).  Here, appellees
moved for summary judgment on both traditional and no-evidence grounds.  

When
reviewing a traditional summary judgment, we determine whether the summary
judgment proof establishes, as a matter of law, that there is no genuine issue
of fact on one or more of the essential elements of the plaintiff=s causes of action or each element of
the affirmative defense.  Tex. R. Civ.
P. 166a(c); American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425
(Tex. 1997); Nixon v. Mr. Property Mgmt. Co., 690 S.W.2d 546, 548B49 (Tex. 1985); Gibbs v. General
Motors Corp., 450 S.W.2d 827, 828 (Tex. 1970).   We take as true all
evidence favorable to the nonmovant and indulge every reasonable inference and
resolve any doubts in the nonmovant=s favor.  Joe v. Two Thirty Nine
Joint Venture, 145 S.W.3d 150, 157 (Tex. 2004). 








In a no‑evidence
motion for summary judgment, the movant represents that there is no evidence of
one or more essential elements of the claims for which the nonmovant bears the
burden of proof at trial.  Tex. R. Civ.
P. 166a(i); Green v. Lowe=s Home Ctrs., Inc., 199 S.W.3d 514, 518 (Tex. App.CHouston [1st Dist.] 2006, pet. denied).  
Such
a motion asserts there is no evidence of one or more essential elements of
claims upon which the opposing party would have the burden of proof at trial. 
Unlike a movant for a traditional summary judgment, a movant for a no-evidence
summary judgment does not bear the burden of establishing a right to judgment
by proving each claim or defense.  A no-evidence summary judgment is
essentially a pretrial directed verdict, to which we apply the same legal
sufficiency standard of review.  A no-evidence summary judgment is properly
granted if the nonmovant fails to produce more than a scintilla of probative
evidence raising a genuine issue of fact as to an essential element of a claim
on which the nonmovant would have the burden of proof at trial.  Lake
Charles Harbor and Terminal Dist. v. Bd. of Trustees of Galveston Wharves,
62 S.W.3d 237, 241 (Tex. App.CHouston [14th Dist.] 2001, pet. denied).  
We must sustain a no‑evidence summary judgment when (1) there is a complete
absence of evidence of a vital fact, (2) the court is barred by rules of law or
of evidence from giving weight to the only evidence offered to prove a vital
fact, (3) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (4) the evidence conclusively establishes the opposite of a vital
fact.  Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  Less than a scintilla of evidence exists when the evidence is so weak
as to do no more than create a mere surmise or suspicion of a fact.  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).

III. 
APPELLANTS= TORT AND BREACH OF CONTRACT CLAIMS

In their
first two issues, appellants claim that the trial court erred in granting
appellees= motions for summary judgment on (1) Looper=s breach of contract claim against
HCCS, (2) Looper=s defamation claim against Castillo, (3) Scott=s defamation claims against Leslie,
Garay, and Castillo, (4) Scott=s intentional infliction of emotional distress claims against
Leslie, Garay, and Castillo, and (5) Scott=s negligent hiring and retention
claims against Leslie.  Appellants also argue that appellees did not
conclusively prove they are entitled to qualified immunity against these
claims. 

A. 
Looper=s Breach of Contract Claim

To
prevail on a claim for breach of contract, the plaintiff must establish (1) the
existence of a valid contract, (2) performance or tendered performance by the
plaintiff, (3) breach of the contract by the defendant, and (4) damages
sustained by the plaintiff as a result of the breach.  Renteria v. Trevino,
79 S.W.3d 240, 242 (Tex. App.CHouston [14th Dist.] 2002, no pet.).  Looper argues that the
trial court erred in granting summary judgment on his breach of contract claim
because Leslie and Castillo failed to conclusively prove that Looper did not
have a contract with HCCS.  

In
February 2004, Looper was hired as an independent contractor by Project GRAD, a
nonprofit organization that works with HCCS  on various academic summer
programs.   Looper alleges that his independent contractor assignment with
Project GRAD ended in May 2004, at which time he entered into an oral contract
of employment with Castillo to continue as the project director on the same
academic project.   Looper bases his breach of contract claim against HCCS on
this alleged oral contract entered into with Castillo.








A junior
college district is a political subdivision of the state.  Hander v. San
Jacinto Junior College, 519 F.2d 273, 279 (5th Cir. 1975).  For the acts of
the governmental body to be valid, it must act as a body.  Thermo Prods. Co.
v. Chilton Indep. Sch. Dist., 647 S.W.2d 726, 732 (Tex. App.CWaco 1983, writ ref=d n.r.e.).  Don Washington of the
HCCS Human Resources Department testified that individual employees, including
college presidents and deans, do not have the authority to extend offers of
employment to prospective employees; only the Chancellor or his designee has
the authority to communicate an offer of employment.  Castillo was the interim
president at Southeast College at the time she allegedly entered into this oral
contract with Looper. Castillo=s alleged oral agreement with Looper is not enforceable
because, as a matter of law, Castillo could not bind HCCS; only the board of
trustees= actions can bind HCCS.   See
Mosely v. Houston Community College Sys., 951 F.Supp. 1279, 1289 (S.D. Tex.
1996) (APlaintiff's claims that oral promises
were made regarding the length of her employment or duties cannot bind the
Defendants, since only Board of Trustees= action can bind HCCS.@).  Thus, any alleged oral promise
that Looper would be director of the Project GRAD program by Castillo cannot
form the basis of a contract binding HCCS. See id.  

Viewing
the record in the light most favorable to Looper, we find that he failed to
raise a genuine issue of material fact that he had a valid contract with HCCS. 
Furthermore, Looper failed to produce more than a scintilla of evidence
demonstrating he had an enforceable contract with HCCS.             Because
HCCS established as a matter of law that Looper had no enforceable contract
with it, the trial court did not err in granting summary judgment in favor of
HCCS on Looper=s breach of contract claim.

B. 
Appellants= Tort Claims

Appellants
further assert various tort claims against appellees and argue that appellees
are not entitled to immunity.  As for HCCS, it is entitled to sovereign
immunity from tort liability except in claims arising from an injury caused by
an employee=s use of a motor-driven vehicle.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.051 (Vernon 2005).  Because
appellants do not assert any tort claims involving motor vehicles, HCCS is
immune from appellants= tort claims.  See id.  








The
remaining individual appellees argue that they are immune under the doctrine of
official immunity.  Official immunity is an affirmative defense that protects
government employees, in their individual capacities, from liability related to
(1) the performance of discretionary duties, (2) within the scope of the
employee=s authority, (3) if the employee acts
in good faith.  City of Lancaster v. Chambers, 883 S.W.2d 650, 653 (Tex.
1994); Govant v. Houston Community College Sys., 72 S.W.3d 69, 74 (Tex.
App.CHouston [14th Dist.] 2002, no pet.). 
Ministerial acts, as opposed to discretionary acts, are those where the law
prescribes and defines the duties to be performed with such precision and
certainty as to leave nothing to the exercise of discretion or judgment.  Downing
v. Brown, 935 S.W.2d 112, 114 (Tex. 1996).  If, however, an action involves
personal deliberation, decision, and judgment, it is discretionary.  Id. 
To meet the second element, within the scope of the employee=s authority, the official=s act must be one wherein the
employee is discharging the duties generally assigned to him or her.  Chambers,
883 S.W.2d at 658.  In determining the last element of good faith, we apply an
objective standard and must determine whether a reasonably prudent official,
under the same or similar circumstances, could have believed that his conduct
was justified based on the information he possessed when the conduct occurred. 
Id. at 656; see also Joe, 145 S.W.3d at 164.  The standard of
good faith as an element of common‑law official immunity is not a test of
carelessness or negligence, or a measure of an official=s motivation.  Id.
Additionally, this test of good faith does not inquire into Awhat a reasonable person would have
done,@ but into Awhat a reasonable person could have
believed.@  Ballantyne v. Champion Builders, Inc., 144 S.W.3d 417, 426 (Tex.
2004).  It does not require the official to show that all reasonably prudent
officials would have made the same decision; rather, the official must show
only that a reasonable person, possessing the same information he had at the
time, could have believed his conduct was lawful.  Chambers, 883 S.W.2d
at 656; Bowles v. Yeganeh, 84 S.W.3d 252, 254 (Tex. App.CDallas 2002, no pet.).

Because
official immunity is an affirmative defense, the burden is upon the movant to
establish each element of the defense.  Grinnell, 951 S.W.2d at 425.  If
the movant establishes the defense, then the nonmovant must come forward with
summary judgment evidence to the contrary.  City of Houston v. Clear Creek
Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  We consider whether each
individual appellee has met his or her burden.

Bruce
Leslie

Scott
alleges that Leslie (1) defamed her before the board of trustees, (2)
intentionally inflicted emotional distress by approving the hiring of Garay and
Astonewalling@ Scott=s transfer request, and (3) was
negligent in hiring and retaining Castillo.  Appellants do not argue that
Leslie was acting outside the scope of his authority.  Therefore, we review the
record to determine whether Leslie established as a matter of law that he was
performing discretionary duties in good faith.  








Leslie
states in his affidavit that, as chancellor, he is called upon to make judgment
calls based on information provided to him.  Any action taken by Leslie was
discretionary in that no policy or procedure dictated the process or outcome of
his involvement in making these judgment calls.  Rather, his actions were the
exercise of his discretion and judgment.[3]  
Furthermore, Leslie=s sworn affidavit indicates that he was not involved in any
decision to remove Scott from the screening committee, and he was not aware of
Looper=s applications for employment in 2003
and 2004.  

Additionally,
Leslie states that any decisions he made allegedly affecting Scott or Looper
were made in good faith in his capacity as chancellor of HCCS.  Leslie states
that he made decisions regarding Project GRAD and Castillo=s assignment based on information
provided to him by senior administrators.  When Leslie received Scott=s email communication regarding Garay=s application for dean, he referred
the matter to the Southeast campus administration according to his usual
practice.  With regard to the statements made to the board of trustees, Leslie
informed the board of trustees about pending litigation, which his job
description requires.  As to Scott=s transfer request, there is no
evidence that Leslie was involved in handling her request in any manner. 
Leslie=s affidavit shows that a reasonably
prudent person under the same or similar circumstances could have taken the
same action.








To raise
a fact issue on the issue of good faith, Scott is required to prove that no
reasonable person in Leslie=s position could have thought the facts were such that they
justified his acts.  See Chambers, 883 S.W.2d at 657.  In attempting to
controvert Leslie=s showing of good faith, Scott produced an evaluation written
by Leslie of Castillo=s performance as interim president.  Leslie=s evaluation shows that, contrary to
Scott=s assertion, Leslie supervised
Castillo and reprimanded her for inappropriate acts regarding a member of the
board of trustees.  Viewing the summary judgment record in the light most
favorable to Scott, we find that  Leslie established official immunity from
Scott=s tort claims.  Furthermore,
appellees failed to present more than a scintilla of evidence showing that 
Leslie=s acts were not discretionary and
that he did not act in good faith.  Accordingly, the trial court did not err in
granting summary judgment in favor of Leslie on appellees= tort claims.

Reynaldo
Garay

Scott
alleged that Garay defamed her and intentionally inflicted emotional distress
by writing a memorandum to one of Scott=s supervisors and an email to
Flores.  While Garay=s application for dean was pending before the screening
committee, Scott, a member of the committee, confronted Garay about rumors she
had heard regarding her leadership and department.  Garay reported that Scott
told him she was Agoing to find it difficult to support [Garay] unless [Garay]
supported her.@  Because of this conflict between Garay and a member of the screening
committee, Garay reported the confrontation to the chair of the committee,
Irene Porcarello.  Scott admitted that she had previously signed a petition to
have Garay removed as chair of the counseling department, and that she felt she
had a right to talk to Garay about her belief that he was spreading rumors
about her.  However, Scott denied that she talked with Garay about the dean
position or that she told him she would have difficulty supporting him.








Scott
also complains of an email Garay sent to Flores in response to Scott=s accusation that he falsified his
application for dean.  In the email, Garay reported that he was encountering
problems similar to those Flores encountered with Aa group of counseling staff.@  Garay also expressed his concern
that Scott was on the screening committee for the purpose of blocking
consideration of himself for the dean position.  Garay defended his decision to
list his experience as interim dean on his application, and told Flores that
Scott was removed from the screening committee because of her previous
confrontation with him.  Garay listed several events that he described as Abehind-your-back tactics@ designed by Scott to prevent him
from being offered the dean position.  

In his
sworn affidavit, Garay indicates that his statements in response to Scott=s allegations were in the scope of
his authority, were discretionary, and were made in good faith.  Garay=s job description indicates that he
was to supervise student counseling services and evaluate personnel in the
student services and community development department.  As such, in supervising
and evaluating Scott, Garay was acting in the scope of his employment with
HCCS.  Further, Garay states that no policy or procedure directed his actions
to the degree that they became ministerial.  Ministerial actions require
obedience to orders or the performance of a duty as to which the actor has no
choice.  Downing, 935 S.W.2d at 114.  Garay=s choice of words in his memorandum
and email communication involved personal deliberation, and was not directed by
policy.  

Garay
further established as a matter of law that his actions were taken in good
faith.  When Garay wrote the memorandum and the email, he had reason to believe
that his interests had been unlawfully invaded by another person, and he was
entitled to respond in an appropriate manner.  See Chambers, 883 S.W.2d
at 656.








Nothing in the record reflects that Garay=s statements were
defamatory or so extreme and outrageous as to evidence an intent to inflict
emotional distress.  Scott alleges that AGaray=s actions were
intentionally made to harm, >clobber,= and punish
[Scott] for her whistleblower report.@  However, Scott
has not shown that a reasonable person in similar circumstances would have
believed his actions were unlawful.  As to each of the statements alleged by
Scott, Garay presented sufficient summary judgment proof that a reasonable
person in his position could have believed he was entitled, even obligated, to
make such statements.  Viewing
the record in the light most favorable to Scott, we find that Garay established
official immunity from Scott=s tort claims.  Furthermore, appellees failed to produce more
than a scintilla of evidence demonstrating that Garay=s acts were not discretionary, not
within the scope of his authority, or not made in good faith.  Thus, the trial
court did not err in granting summary judgment in favor of Garay on Scott=s tort claims.

Diana
Castillo

In this
appeal, Scott alleges Castillo defamed her by publishing an incident report
made to the HCCS police.  The incident report was the result of a verbal
argument between Scott and Castillo.  The confrontation was initiated by Scott
when she accused Castillo of undermining her relationship with Garza, the new
Southeast College president.  Castillo felt threatened by Scott=s confrontation and felt she needed
to file a criminal report.  Scott contends that Castillo Aoutrageously published a malicious
and frivolous@ police report to Scott=s supervisors and HCCS associates.  

First,
Castillo=s actions were discretionary, not
ministerial.  No policy or procedure directed Castillo to report or not to
report such incidents to the police.  Castillo=s act of reporting the incident was
one in which she used her judgment and discretion.  See Downing, 935
S.W.2d at 114.  Second, Castillo=s action in reporting the
confrontation with Scott was within the scope of her authority.  During the
time of these events, Castillo was the interim president of Southeast College. 
As interim president, she was the top administrator and the ultimate
decision-maker at the college level regarding employment offers, terminations,
budgetary matters, operations, human relations, procurement, and risk
management.  Because Scott was under Castillo=s supervision at the time of these
events, Castillo was acting within the scope of her employment when she
reported Scott=s actions to the HCCS police. See Chambers, 883 S.W.2d at
658 (holding that an official acts within the scope of her authority if she is
discharging the duties generally assigned to her).








Lastly,
the record reflects that Castillo made the police report in good faith. 
According to her affidavit, Castillo filed the report because she felt
physically threatened by Scott.  A reasonable person in Castillo=s position could have believed that
it was necessary to report Scott=s actions to the campus police.  See
McCartney, 50 S.W.3d at 611. Other than alleging that Castillo filed the
claim in Abad faith,@ Scott presented no summary judgment evidence to show that a
reasonably prudent person in similar circumstances would have believed Castillo=s actions were unlawful.  Id.  
Scott=s unsubstantiated  belief that the
report was made in bad faith is less than a scintilla of evidence because it is
so weak as to do no more than create a mere surmise or suspicion of fact.  See
Chapman, 188 S.W.3d at 751.

Appellees
further allege that Castillo defamed Looper and intentionally inflicted
emotional distress upon Scott by writing a memorandum pertaining to Looper and
his work with Project GRAD.  In this memorandum, Castillo specifically requests
that Looper stop performing any work on behalf of HCCS because he was not
authorized to do so.  Castillo told Looper that he did not have a signed
agreement with either Project GRAD or HCCS.  Castillo stated that she had been
contacted by representatives of Project GRAD informing her of Looper=s continuing to act as a 
representative of HCCS; she reminded Looper that he was not an HCCS
representative.  Castillo requested, for the third time, that he stop
contacting Project GRAD.








Castillo
presented competent evidence that her acts were discretionary; the statements
made in the memorandum and the decision to communicate the information with
Looper were not controlled by HCCS policy or procedure.  Castillo presented
evidence that she was responsible for the successful execution of Project GRAD
and, therefore, was acting within the scope of her authority.  Further, nothing
in the record reflects that the memorandum was so extreme and outrageous as to
evidence an intent to inflict emotional distress.  Castillo=s memorandum to Looper was not the
result of bad faith.  A reasonable person in Castillo=s circumstances could have believed
that it was necessary to confirm in writing her requests that Looper stop
representing himself as an employee of HCCS or Project GRAD.  Viewing the
summary judgment record in the light most favorable to Scott, we find that
Castillo established official immunity from Scott=s tort claims.[4] 
See McCartney, 50 S.W.3d at 611.  Furthermore, appellees failed to produce
more than a scintilla of evidence demonstrating that Castillo=s acts were not discretionary, not
within the scope of her authority, or not made in good faith.

Having
shown as a matter of law that Leslie, Garay, and Castillo performed
discretionary duties in good faith and within the scope of their authority,
they were each entitled to official immunity on appellants= tort claims.  Therefore, the trial
court did not err in granting summary judgment.  Appellants= first and second issues are
overruled. 

IV. SCOTT=S TWA CLAIMS

In
appellants= third, fourth and fifth issues, they argue that the trial court erred in
granting summary judgment against Scott=s TWA claims.  Scott filed TWA claims
against HCCS, Leslie, and Garay, arguing that she suffered retaliation for (1)
disclosing to HCCS the contents of the Castillo letter demonstrating that
Castillo was abusing her official capacity and (2) reporting to the Harris
County District Attorney=s Office that Garay falsified information on his job application.
To establish a Whistleblower claim, Scott must produce competent summary
judgement evidence that: (1) she was a public employee; (2) she made a report;
(3) in good faith; (4) of a violation of law; (5) to an appropriate law
enforcement authority; and (6) she suffered an adverse employment action
because of making the report.  Texas Dept. Of Human Services of the State of
Texas v. Hinds, 904 S.W.2d 629, 632B33 (Tex. 1995).  Appellees= summary judgment motions contest
whether Scott=s report was made to an appropriate law enforcement authority and whether
the report was made in good faith.








Under
the Act, an appropriate law enforcement authority is a governmental entity
authorized to Aregulate under or enforce the law alleged to be violated.@  Tex.
Gov=t Code Ann. ' 554.002(b)(1) (Vernon 2004); Texas
Depart. Of Transp. v. Needham, 82 S.W.3d 314, 320 (Tex. 2002). 
Alternatively, an appropriate law enforcement authority is a governmental
entity authorized to Ainvestigate or prosecute a violation of criminal law.@  Tex.
Gov=t Code Ann. ' 554.002(b)(1); Needham, 82
S.W.3d at 319.  It is not enough that a governmental entity has general
authority to regulate, to enforce, to investigate, or to prosecute.  Needham,
82 S.W.3d at 319.  Rather, the governmental entity must be authorized either to
(1) regulate under or to enforce Athe law alleged to be violated@ or (2) investigate or to prosecute Aa violation of criminal law.@  Id. at 320.  The particular
law the public employee reported is critical to the determination.  Id. 
Thus, we must determine whether HCCS had the authority to regulate under, to
enforce, to investigate, or to prosecute the reported violations of abuse of
official capacity and tampering with a government record under the Texas Penal
Code.  Id. 

   After
analyzing the reported violation of law, abuse of official capacity and
tampering with a government document, we conclude that HCCS was not an
appropriate law enforcement authority.  HCCS has no authority to regulate under
or enforce these Texas criminal offenses.  Nor does it have the authority to
investigate or prosecute these criminal laws.  See Tex. Gov=t Code Ann. ' 554.002(b)(2).  Accordingly, we hold
that, as a matter of law, HCCS is not an appropriate law enforcement authority
under section 554.002(b)(2) for a public employee to report another employee=s violation of Texas=s criminal offenses of abuse of
official capacity and tampering with a government document.  








However,
our conclusion that HCCS is not a governmental entity authorized to regulate
under, enforce, investigate, or prosecute Texas=s criminal offenses of abuse of
official capacity and tampering with a government document does not end our
inquiry.  Scott may still obtain TWA protection if she in good faith believed
that HCCS was an appropriate law enforcement authority as the statute defines
the term.  See Tex. Gov=t Code Ann. ' 554.002(b).  AGood faith@ means that (1) the employee believed
the governmental  entity was authorized to (a) regulate under or enforce the
law alleged to be violated in the report, or (b) investigate or prosecute a
violation of criminal law and (2) the employee=s belief was reasonable in light of
the employee=s training and experience.  Wichita County v. Hart, 917 S.W.2d
779, 784 (Tex. 1996); Needham, 82 S.W.3d at 321.  Accordingly, we must determine
if, under the Hart test, there is any evidence to support the conclusion
that Scott had a good faith belief that she reported the alleged acts of abuse
of official capacity and tampering with a government document to the
appropriate law enforcement authority.  Needham, 82 S.W.2d at 321. 

Scott is
an educated woman who testified she knew that the Human Resources generalist
did not have authority to prosecute a crime.  Additionally, Scott was well
aware that the Harris County District Attorney=s Office was conducting a criminal
investigation against Castillo for abuse of official capacity, the very act
that Scott reported to HCCS.  It is not reasonable for a prudent person in
similar circumstances to believe HCCS=s Human Resources department could
investigate or enforce criminal allegations of abuse of official capacity and
tampering with a government document.  There is insufficient evidence to
support the contention that Scott had a good faith belief that HCCS was an
appropriate law enforcement authority under the TWA to report Castillo=s alleged criminal acts of abuse of
official capacity and tampering with a government document. 

Next, Scott
alleges that she suffered retaliation and was constructively discharged for
reporting to the Harris County District Attorney=s Office that Garay falsified
information on his job application.  In its summary judgment motion, appellees
argue (1) the trial court lacked jurisdiction to hear this particular claim
because appellee failed to timely initiate HCCS=s grievance procedure within 90 days;
(2) Scott did not make this report in good faith; and (3) Scott did not suffer
any adverse personnel action for making such report.








The TWA
requires that an employee initiate a grievance using the employer=s grievance procedure within 90 days
of the violation.  If the employee fails to file such a grievance, then her
claims are jurisdictionally barred.  See Tex. Gov=t Code Ann. ' 311.034 (Vernon 2005);  Univ. of
Houston v. Barth, 178 S.W.3d 157, 163 (Tex. App.CHouston [1st Dist.] 2005, no pet.). 
The record contains no evidence that Scott initiated a grievance using HCCS=s grievance procedure with respect to
her constructive discharge claim.  Texas courts have uniformly held that when
an employer maintains a specific grievance procedure, the employee must utilize
the procedure.  See Montgomery County Hosp. v. Smith, 181 S.W.3d 844,
853 (Tex. App.CBeaumont 2005, no pet.).  The record clearly demonstrates that Scott was
aware of HCCS=s grievance procedure and knew how to file a grievance because she had
previously filed several grievances through the same process.  Instead of
filing a grievance, as she did in the past for each incident of alleged
retaliation, Scott simply resigned without more.  As a result, the trial court
did not have jurisdiction over Scott=s TWA claim regarding her alleged
constructive discharge.          

Furthermore,
it is well settled among Texas courts that the TWA does not create a cause a action
against individual employees of a governmental entity, such as Leslie and
Garay.  See Austin v. HealthTrust, Inc.-The Hospital Co., 967 S.W.2d 400
(Tex. 1998) (declined to recognize a Aprivate whistleblower@ cause of action); Alejandro v.
Robstown Indep. Sch. Dist., 131 S.W.3d 663, 668B69 (Tex. App.CCorpus Christi 2004, no pet.) (upheld
the district court=s grant of a directed verdict on the plaintiff=s claims against the individual
defendants because there was no privated right of action against the officials
in their individual capacities).  Therefore, the trial court did not abuse its
discretion in granting summary judgment in favor of Leslie and Garay on Scott=s TWA claims.  We overrule appellants= third, fourth and fifth issues.  
The judgment of the trial court is affirmed.[5]

 

/s/        Adele
Hedges

Chief
Justice

Judgment rendered and Memorandum
Opinion filed November 29, 2007.

Panel consists of Chief Justice
Hedges, Justice Frost, and Senior Justice Hudson.* (Hudson, J. concurring in
the result only).

* Senior Justice J. Harvey Hudson
sitting by assignment.









[1]  See Castillo v. Flores, No. 01-05-00760-CV,
2006 WL 4888609 (Tex. App.CHouston [1st
Dist.] Mar. 2, 2006, no pet.) (mem. op.).  In this lawsuit, Flores alleged,
among other things, that Castillo had defamed her, harassed her, and retaliated
against her to halt Flores= candidacy for
the interim president position at Southeast College.





[2]  The parties dispute the reason for Scott=s removal. Scott alleges she was removed from the
committee because she revealed that Garay had falsified information on his
application while appellees contend that she was removed for improperly
confronting Garay about his candidacy.





[3]  Scott asserts that because she filed a claim under
the TWA, the actions of each appellee are ministerial rather than
discretionary.  However, it is well settled under Texas law that individuals,
as opposed to government entities, are not covered by the TWA.  See Austin
v. HealthTrust, Inc.- The Hospital Co., 967 S.W.2d 400 (declined to
recognize a Aprivate whistleblower@ cause of action); Alejandro v. Robstown Indep. Sch. Dist., 131
S.W.3d 663, 66B69 (Tex. App.CCorpus
Christi 2004, no pet.) (upheld the district court=s grant of a directed verdict on the plaintiff=s claims against the individual defendants because
there was no private right of action against the officials in their individual
capacities).  Therefore, the TWA does not categorize Leslie=s, Castillo=s,
or Garay=s duties as either ministerial or discretionary.





[4]  Castillo also argues that she established the
complete defense of truth regarding Scott=s
defamation claim arising from the incident report.  However, since we have held
that Castillo established the affirmative defense of official immunity, we do
not reach this argument.  





[5]  Appellees filed a cross-point objecting to the trial
court=s refusal to sustain their objections to appellants= summary judgment evidence.  Because we have affirmed
the trial court=s judgment, we need not address appellees= cross-point.